721 So.2d 1130 (1998)
Lewis BARNES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00131COA.
Court of Appeals of Mississippi.
September 1, 1998.
*1131 Robert E. Evans, Monticello, for Appellant.
Michael C. Moore, Attorney General, Dewitt T. Allred, III, Special Asst. Atty. Gen., for Appellee.
Before THOMAS, P.J., and KING and SOUTHWICK, JJ.
THOMAS, Presiding Judge, for the Court:
¶ 1. Lewis Barnes appeals his conviction of arson raising the following issues as error:

I. BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT A CONVICTION OF ARSON BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE, THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND BY REFUSING TO GRANT DEFENDANT'S PEREMPTORY INSTRUCTION.

II. BECAUSE THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN THAT THE STATE DID NOT PROVE MALICE AND WILLFULNESS AS NECESSARY ELEMENTS OF FIRST DEGREE ARSON, THE TRIAL COURT ERRED BY REFUSING TO GRANT DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 2. Finding no error, we affirm.

*1132 FACTS
¶ 3. At about 7:35 a.m. on November 21, 1994, the Prentiss Fire Department received a report of a fire at the residence of Lewis Barnes. Upon arrival, Chief Howard Kelly observed smoke coming out of the eaves, but no visible flames. The firefighters found no open windows or doors and had to make entry breaking the screen door and the glass window of the back door. Chief Kelly testified that the fire was smoldering rather than blazing because the house was sealed tight, thus depriving the fire of oxygen.
¶ 4. State Deputy Fire Marshall Ricky Davis investigated the house the next day. During his investigation Davis questioned Lewis Barnes about the fires. Davis asked Barnes about how many keys there were to the home, and he determined that there were, in all, six keys to the three main door locks. Davis recovered five of these and he asked Barnes if he had the sixth key. Barnes told him that the sixth key might be on the key ring for one of his vehicles, which his sons had driven. His sons returned and as Barnes was getting the key ring from the car, Davis saw him take something off the key ring and place it in the fist of his right hand. Barnes gave the key ring to the officer with his left hand and was placing his right hand in his pocket. Davis stopped him and told him to open his right hand. Davis stated that Barnes then jumped back and said that he did have the house key in his hand.
¶ 5. Davis collected debris and sent it to the Mississippi Crime Laboratory to have the debris tested for accelerates. All tests were negative for accelerates. Davis testified, however, that the fire itself can consume any accelerates and there not be traces left. He stated that in his opinion the burn patterns on the floor of the hallway where the fire started indicated the use of an accelerant. He testified that one point of origin of the fire was in front of a closet in the hallway. Another point of origin was in a bathroom. In his opinion, the two fires were non-connecting fires, so each would have had to have started on its own. In Davis's opinion, neither fire was accidental, and both were intentionally set. Davis stated that Barnes had filed for bankruptcy and that Barnes had insured the house and its contents against fire in the amounts of $48,000 and $20,895.
¶ 6. Lewis Barnes testified on his own behalf. Barnes stated that he left his home for work that morning about 5:45 a.m. Barnes was called at work and told of the fire at his home; he immediately returned while fire fighters were still present. Davis and Greg Blackwell, Jefferson Davis County Fire Investigator, met with Barnes, and he signed a consent giving Davis and Blackwell permission to search his home. Barnes gave a statement that he had been having trouble with someone breaking into his home before the fire and that one of his house keys was lost. Barnes testified that his job with MagnaTek required him to get his clothes exposed on a daily basis to oily chemicals that were flammable. Barnes stated that as a daily routine when he got home from work he would undress and put his work clothes in the bathroom for later laundering. In his testimony, Barnes stated that he did not know how the fires started, but that he did not start the fire.
¶ 7. After deliberation, the jury returned a verdict of guilty of arson.

ANALYSIS

I.

BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT A CONVICTION OF ARSON BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE, THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND BY REFUSING TO GRANT DEFENDANT'S PEREMPTORY INSTRUCTION.
¶ 8. Barnes argues that because the prosecution failed to exclude his reasonable hypothesis, that an overload in the house wiring initiated the fire, spontaneous combustion of oily, greasy clothing, or intruders *1133 caused the fire, the proof was insufficient to support a verdict of guilty. Specifically, Barnes argues that the circumstantial evidence offered at trial was consistent with some rational hypotheses other than guilt. To test the sufficiency of the evidence of a crime:
[W]e must, with respect to each element of the offense, consider all of the evidence not just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d 803, 808 (Miss.1987) (citations omitted).
¶ 9. On appeal, this Court does not retry the facts, but must take the view of the evidence most favorable to the State and must assume that the fact-finder believed the State's witnesses and disbelieved any contradictory evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Griffin v. State, 607 So.2d 1197,1201 (Miss.1992). On review, we accept as true all evidence favorable to the State, and we give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Griffin, 607 So.2d at 1201 (citations omitted). The Court will reverse such a ruling only for an abuse of discretion. McClain, 625 So.2d at 781.
¶ 10. Arson is almost always subject to proof solely by circumstantial evidence. The State's case was based on circumstantial evidence to establish Barnes's link to the arson crime. In circumstantial evidence cases, "the state is required to `prove the accused's guilt not only beyond a reasonable doubt, but to the exclusion of every other hypothesis consistent with innocence.' "Leflore v. State, 535 So.2d 68, 70 (Miss.1988) (quoting Guilbeau v. State, 502 So.2d 639, 641 (Miss.1987)). Circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence, so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any reasonable hypothesis except that of her guilt. Tolbert v. State, 407 So.2d 815, 820 (Miss.1981). The evidence as a whole need not exclude all possibility that the defendant is innocent, it must only make such theory seem unreasonable. Id. A fact-finder is in the best position to evaluate circumstantial evidence surrounding the crime, and its verdict is entitled to due deference. Id. (quoting Johnson v. State, 23 So.2d 499, 500 (Miss.1945)). "A mere fanciful or far-fetched or unreasonable hypothesis of innocence is not sufficient to require acquittal." Baker v. State, 317 So.2d 901, 902 (Miss.1975).
¶ 11. In this case, the evidence focused on several circumstantial elements of guiltproof that the fire was intentionally set and motive. Davis stated that he believed the burn patterns on the floor of the hallway where the fire started indicated the use of an accelerant and that he examined the wiring and eliminated that as the cause. The primary basis for his opinion was that the fire had two separate, non-connecting points of origin. The State proved the identity of Barnes inferentially from the evidence that Barnes lived in the house alone, that he locked the house when he left that morning, that the likely time frame during which the fire would have smoldered included the time at which Barnes left for work, that Barnes had a financial motive to set the fire, and that Barnes attempted to conceal the sixth key from Davis. Although standing alone, evidence of motive, presence, or opportunity is insufficient to prove guilt, here the evidence, taken together, was sufficient to connect Barnes with the eruption of the blaze. This Court will neither reweigh the evidence nor assess the credibility of the witnesses, but will consider only the evidence and reasonable inferences supporting the verdict. Therefore, Barnes's first assignment of error is without merit.

*1134 II.

BECAUSE THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN THAT THE STATE DID NOT PROVE MALICE AND WILLFULNESS AS NECESSARY ELEMENTS OF FIRST DEGREE ARSON, THE TRIAL COURT ERRED BY REFUSING TO GRANT DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 12. Barnes opines that the verdict in his case was against the overwhelming weight of the evidence because the burden was not met by the State that the fires were maliciously and willfully set as required under Mississippi Code Annotated § 97-17-1 (Rev.1994), the arson statute. "[S]tatutes which make malice and wilfulness an ingredient of the crime of arson, a particular intent or malice against a person or thing is not essential; it is sufficient to show that the accused was actuated by a malicious motive and that he set the fire wilfully rather than negligently or accidentally." Isaac v. State, 645 So.2d 903, 908 (Miss.1994) (citation omitted). Thus, the State's burden is met if during trial it shows that a fire was intentionally set and the accused had a malicious motive. The State's expert stated that in his opinion the fire was set intentionally rather then accidentally. He came to this conclusion due to the fact that amongst other things, the fire had started in two separate, non-connecting points of origin.
¶ 13. "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983) (citation omitted). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Id.
¶ 14. This Court has analyzed Barnes's motive, means, and opportunity and in reviewing the circumstantial evidence, we find that by allowing the verdict to stand we have not sanctioned an unconscionable injustice. Accordingly, this issue has no merit.
¶ 15. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT OF CONVICTION OF ARSON AND SENTENCE OF TWENTY YEARS, TEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TEN YEARS SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., concur.