KING, P.J.,
for the Court:
¶ 1. John Kendall was convicted of arson in the Circuit Court of Monroe County, Mississippi, and sentenced to serve three years in the custody of the Mississippi Department of Corrections. His motion for new trial or judgment notwithstanding the verdict denied, Kendall has now perfected this appeal. He presents for this Court’s consideration the following issues, which are taken verbatim from his brief: 1) the trial court erred in overruling the defendant’s motion for a new trial or in the alternative a directed verdict, 2) Rule 9.04 discovery violation necessitates a new trial, and 3) the State failed to prove the chain of custody of the dirt taken from the crime scene.
FACTS
¶ 2. On the afternoon of June 20, 1998, Kendall, his girlfriend Janice Cunningham, and Donna Childers went by boat to the Aberdeen Marina. Cunningham and Childers remained in the boat while Kendall entered the marina store to pay for gas and other purchases. After paying for his purchases, Kendall walked back toward the boat dock. En route to the boat, Kendall walked past Harvey Law, Child-ers’s brother-in-law. Kendall and Law be *1091 came engaged in an altercation after which Kendall threaten to harm Law and burn his home.
¶ 3. Kendall returned to the boat, took Childers back to her home and left shortly thereafter. Later that evening, Cunningham and Kendall attempted to locate Law’s home to offer him an apology. Both Cunningham and Kendall denied locating Law’s home.
¶ 4. Between 10 p.m. and 11 p.m., Christine Shield, Law’s next-door-neighbor, noticed a Geo Tracker pull into Law’s driveway. A few minutes later she heard a popping noise and looked outside again. She noticed a fire near the front of Law’s truck but assumed it to be trash. About fifteen minutes later, she heard a louder pop, looked outside, noticed the underside of the truck on fire, and called the Wren Volunteer Fire Department.
¶ 5. The fire and sheriffs departments responded to the call. Upon their arrival, the truck was totally engulfed in flames. The fire department quickly put out the fire.
¶ 6. Because this was a fire of suspicious origins, the sheriffs department conducted the initial investigation, which resulted in the recovery of a bottle and cigarette lighter. Mike Ivy, Deputy State Fire Marshall, conducted the subsequent investigation. Ivy viewed the scene, collected a soil sample and interviewed witnesses. He determined the cause of the fire was arson. Ivy also determined that the cigarette lighter and bottle recovered from the scene by the sheriffs department were of no evidentia-ry value. Because of this determination, only the soil sample was taken to the Mississippi State Crime lab for analysis. Testing of the soil sample revealed the presence of gasoline. The sample was then stored at the Meridian Crime Lab until Kendall’s trial began. At the close of trial, the jury found Kendall guilty of third-degree arson.
I.
Did the trial court err in overruling the defendant’s motion for a new trial or a directed verdict
¶ 7. Kendall argues that the evidence was insufficient to sustain a verdict and the trial court erred by denying his motion for a directed verdict. He suggests that the testimony of the State’s witnesses was so contradictory as to be of insufficient weight to support a conviction. When faced with a challenge to the sufficiency of the evidence, the Court views the evidence in the light most favorable to the State. That evidence consistent with guilt will be accepted as true. The Court must also accord to the State all favorable inferences which may be reasonably drawn from the evidence. Having done so the Court is “authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that a reasonable and fair minded juror could only find the accused not guilty.” McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 8. Kendall was convicted of third degree arson. Miss.Code Ann. § 97-17-7 (Rev.2000) defines third degree arson as the willful and malicious burning of personal property of a value of at least $25. The State was therefore required to prove (1) that the automobile was personal property, (2) had a value of at least $25, (3) was willfully burned and (4) maliciously burned. The owner established the nature of the burned object (personal property) and its value. The State’s remaining obligation was to establish malice and willfulness. The Court has held that this burden is met if the State shows that the fire was set intentionally and the accused was activated by a malicious motive. Barnes v. State, 721 So.2d 1130 (¶ 12)(Miss.Ct.App.1998). In the case sub judice, the State presented testimony from Mike Ivy, the Deputy State Fire Marshall, who determined that the fire which destroyed Law’s truck had three distinct *1092 places of origin. The front, middle and rear of the truck all showed signs of the use of an accelerant thus satisfying the required proof that the fire was intentionally set. The State presented the testimony of Harvey Law and Donna Childers who testified that Kendall threaten to harm Law and to burn his home. Then-testimony indicated a malicious motive.
¶ 9. Kendall was convicted of arson after the jury considered the testimony presented in this case. Testimony from a single credible witness is enough to sustain a conviction. Holmes v. State, 660 So.2d 1225, 1227 (Miss.1995). “Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” White v. State, 732 So.2d 961 (¶ 20)(Miss.1999). This Court finds that there existed substantial facts upon which the jury could and did conclude that Kendall was guilty of arson.
II.
Did the Rule 9.04 discovery violation necessitate a new trial
¶ 10. Kendall contends that the State failed to turn over all evidence to the defense. He specifically alleges that the cigarette lighter and a small bottle recovered at the scene were not provided to the defense for inspection. Kendall argues that those items were potentially exculpatory. In suggesting that these items were potentially exculpatory, Kendall seems to infer that the State was obligated to conduct appropriate tests to determine whether the items had any evidentiary value. The rule providing for criminal discovery is designed to ensure a fundamentally fan-trial and prevent trial by ambush. It does not obligate the State to test every item of evidence collected.
¶ 11. Rule 9.04 of the Uniform Circuit and County Court Rules provides that a defendant upon written request must be allowed to inspect and test physical evidence in the possession of the State. Pursuant to this rule, Kendall made a written discovery request. That request has not been made a part of the appellate record, and this Court is therefore unable to determine whether it also included a request to test the physical evidence collected by the State. While Rule 9.04 contemplates voluntary compliance, it provides for court enforced discovery, either before or during trial, should voluntary compliance fail. There is nothing contained in the appellate record which shows that Kendall requested that the trial court require production of either the lighter or bottle for testing. The record clearly establishes that he was aware of these items prior to trial.
¶ 12. The record provided to this Court does appear to indicate that the evidence remained in the sheriffs office available for testing upon appropriate request by Kendall. We also note that Kendall, even during the course of trial, never objected to testimony regarding the fighter and bottle. Indeed it was Kendall who first raised the subject of the bottle at trial. We also note that Kendall during the trial never requested a continuance, or the trial court’s assistance to determine the availability of this evidence, or to arrange for an independent test.
¶ 13. The record provided to this Court indicates that Kendall raised on appeal for the very first time, any complaint to the handling of the fighter and bottle. Under these circumstances, we hold that this issue is procedurally barred. Hogan v. State, 741 So.2d 296 (¶ 7)(Miss.Ct.App.1999) (quoting Davis v. State, 660 So.2d 1228, 1246 (Miss.1995)).
III.
Did the State fail to prove the chain of custody of the dirt taken from the crime scene.
¶ 14. Kendall argues in his final issue that the chain of custody was not shown because Bobby Edwards did not testify that he took the soil sample to the crime lab. Both Mike Ivy and Dirk Erickson, a *1093 forensic scientist, testified that Edwards brought the sample to the crime lab. It was received by Hathcook. Erickson then analyzed it and sent it to the Meridian Crime Lab pending trial. Sheriff Maxey testified that he went to Meridian the day before trial, picked up the soil sample, brought it back to the sheriffs department and locked it up until it was transported to the courthouse. Deputy Tim Ritter testified that he retrieved the sample the morning of trial and brought it to the court clerk. “The burden to produce evidence of a broken chain of custody is on the defendant.” Brooks v. State, 761 So.2d 944 (¶ 18) (Miss.Ct.App.2000). Unless there is reason to believe that the evidence was tampered with, a break in the chain does not bar introduction. Id. at (¶ 21).
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF CONVICTION OF THIRD DEGREE ARSON AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FINE OF $1,000 AND RESTITUTION OF $2,000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED AGAINST MONROE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.