893 So.2d 258 (2005)
Henry Clifton MOSES a/k/a Cliff Moses, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01094-COA.
Court of Appeals of Mississippi.
November 16, 2004.
Rehearing Denied February 8, 2005.
*259 William C. Bristow, Tupelo, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., IRVING and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. On February 7, 2003, Henry Clifton "Cliff" Moses was found guilty of depraved heart murder by a jury verdict rendered in the Circuit Court of Lee County. On April 8, 2003, Moses was sentenced as an habitual offender under Mississippi Code Annotated § 99-19-81 (Rev.2000) to serve a term of life without the possibility of *260 parole, reduction or suspension of sentence, or probation. Moses moved for a directed verdict at the close of the State's case and at the close of his own case. Both of these motions were denied. Moses also filed post-trial motions for judgment of acquittal JNOV or in the alternative for a new trial. Both of these motions were denied. Aggrieved by this judgment and sentence, Moses now appeals and raises the following issues:
I. DID THE TRIAL COURT ERR IN DENYING MOSES'S MOTIONS FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE IN CHIEF AND AT THE CLOSE OF THE DEFENSE'S CASE IN CHIEF?
II. WAS THE VERDICT OF THE TRIAL COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND DID THE TRIAL COURT ERR IN FAILING TO GRANT MOSES'S MOTION FOR JNOV?
III. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF MOSES'S PRIOR BAD ACTS?
Finding no reversible error, we affirm the judgment of the trial court.

FACTS
¶ 2. Cliff Moses and his wife, Dorinda, sadly, had been living a life of vagrancy and dissipation. Their relationship itself, in addition to the general mode of their living, was apparently turbulent and unsettled. Things came to a tragic end after Dorinda met Moses at a local motel for the alleged purpose of spending several days in binge drinking.
¶ 3. On December 26, 2000, the fourth day of their stay at the motel, Dorinda was taken to the North Mississippi Medical Center emergency room. The treating personnel at the emergency room found Dorinda to be in a life threatening condition. Among the more significant things observed by the emergency room personnel were tests showing Dorinda's blood alcohol and urine alcohol levels to be zero, in addition to bite marks and various bruises present on her body. Dorinda was also apparently suffering from some kind of bodily organ failure. On December 29, 2000, she died.
¶ 4. The cause of death, according to the treating physicians, was liver failure due to acetaminophen toxicity and rhabdomyolysis, complicated by alcohol abuse. However, the physician who performed the autopsy opined that the cause of death was blunt force trauma to the abdomen, leading to necrosis of the bowels. Based upon, among other things, this conclusion by the physician performing the autopsy, Moses was charged and ultimately convicted of murder.

LEGAL ANALYSIS

I. DID THE TRIAL COURT ERR IN DENYING MOSES'S MOTIONS FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE IN CHIEF AND AT THE CLOSE OF THE DEFENSE'S CASE IN CHIEF?
¶ 5. Moses contends that the evidence and proof presented at trial, being almost entirely circumstantial, did not prove guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with Moses's innocence. Accordingly, he asks this Court to reverse the lower court's denial of his motions for directed verdict. The State argues that the verdict was supported by the evidence and that the motions were properly denied.

STANDARD OF REVIEW
¶ 6. In reviewing a trial court's decision on a motion for directed verdict we *261 "consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence." Gatewood v. Sampson, 812 So.2d 212, 219(¶ 11) (Miss.2002) (citing Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997)). We have also held in this regard:
If the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render. On the other hand, if substantial evidence exists in support of the verdict, that is, "evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions," then this Court must affirm.
Gibson v. Wright, 870 So.2d 1250, 1255(¶ 9) (Miss.Ct.App.2004) (citations omitted).
¶ 7. We review convictions based upon circumstantial evidence in order to determine whether the State's evidence was opposed by a preponderance of evidence favoring the defendant. Alexander v. State, 811 So.2d 272, 278(¶ 14) (Miss.Ct.App.2001). In making this determination, we must, viewing all of the evidence in the light most favorable to the verdict, accept as true all credible evidence of guilt, and we must grant the State all favorable and reasonable inferences that may be drawn from the evidence. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). "We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id. On appeal we may not second guess the jury's determination of matters relating to weight and credibility of the evidence, as these tasks are the sole province of the jury. Id.; Alexander, 811 So.2d at 277-78(¶ 13). Finally, we note that in a case based upon circumstantial evidence, the State must prove every element of the crime beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Barnes v. State, 721 So.2d 1130, 1133(¶ 9) (Miss.Ct.App.1998).

DISCUSSION
¶ 8. Our task then, in light of this standard of review, requires us to examine the evidence in the record. The State offered the following evidence to support the conviction: the victim had various bruises upon her body when she was admitted to the hospital, the victim had bite marks on her left hand when she was admitted to the hospital, the victim's blood and urine alcohol content were zero when she was admitted to the hospital, Moses had two prior convictions for domestic abuse upon the victim, the victim's family testified that she had been abused by Moses in the past, and the doctor performing the autopsy determined the cause of the victim's death to be blunt force trauma to the abdomen, leading to necrosis of the bowels.
¶ 9. Moses contended that the bruises were not caused by his hitting the victim, that the bite marks were self-inflicted, and that, while he had hit the victim in the past, he did not hit the victim on this occasion. Moses also offered evidence that the treating personnel at the hospital believed the cause of death to be liver failure, and he also offered testimony of an expert medical witness who opined that the cause of death was liver failure due to acetaminophen toxicity. Moses argues that the State's purely circumstantial evidence failed to exclude every reasonable hypothesis of his innocence.
*262 ¶ 10. While our review of the record does indicate that Moses presented evidence at trial that contradicted the State's version of events, we are constrained by our standard of review to affirm the trial court's rulings. "On appeal, this Court does not retry the facts, but must take the view of the evidence most favorable to the State and must assume that the fact-finder believed the State's witnesses and disbelieved any contradictory evidence." Barnes, 721 So.2d at 1133(¶ 9). Viewing the evidence in this light, we cannot say that the State's evidence was opposed by a preponderance of Moses's evidence or that reasonable and fair-minded jurors could only have found Moses not guilty. We find in the record "substantial evidence of such quality and weight that ... reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." Mangum v. State, 762 So.2d 337, 342 (¶ 11) (Miss.2000). Since our review of the record indicates that reasonable jurors could have found Moses guilty, we may not disturb their verdict on appeal. Id.
¶ 11. Notably, in Barnes we declared, "The evidence as a whole need not exclude all possibility that the defendant is innocent, it must only make such theory seem unreasonable." Barnes, 721 So.2d at 1133(¶ 10). Therefore, the mere fact that we may be able to formulate an hypothesis under which Moses would be innocent does not make the verdict reversible. Id. In order to disturb this conviction, we would have to find that no reasonable juror could have come to any other conclusion than that Moses's hypotheses of innocence were reasonable. Mangum, 762 So.2d at 342(¶ 11). This we cannot do, viewing the evidence presented by the State in the light most favorable to the verdict.
¶ 12. The hypothesis that the bruises and bite marks were not inflicted by Moses could have been rendered unreasonable in the mind of a reasonable juror by the State's evidence that the bruises and bite marks could have been inflicted by Moses. The hypothesis that Dorinda died from liver failure due in part to overuse of alcohol during the alleged drinking binge at the hotel could have been rendered unreasonable in the mind of a reasonable juror by the State's evidence that Dorinda had no traces of alcohol in her body upon being admitted to the hospital. The hypothesis that the cause of Dorinda's death was Tylenol toxicity could have been rendered unreasonable in the mind of a reasonable juror by the State's evidence that Dorinda's Tylenol level was merely close to the toxic level as opposed to at or above the toxic level. The hypothesis that Moses did not hit Dorinda on this particular occasion and that the death was accidental could have been rendered unreasonable in the mind of a reasonable juror by the State's evidence of blunt force trauma to Dorinda's abdomen in addition to the numerous external bruises upon her body and the autopsy physician's testimony that blunt force trauma to the abdomen was the cause of death.
¶ 13. We must hasten to add that we do not decide that any one of these hypotheses was in fact unreasonable. We simply note that, applying the proper standard of review, a reasonable juror could have concluded that the State's evidence excluded all reasonable hypotheses of Moses's innocence. In order to affirm, the applicable standard of review does not demand that we find that the State's evidence in fact excluded all reasonable hypotheses of Moses's innocence. Barnes, 721 So.2d at 1133(¶ 10) (holding that "[a] fact finder is in the best position to evaluate circumstantial evidence surrounding the crime, and its verdict is entitled to due deference.").
*263 ¶ 14. We need only find that reasonable and fair-minded jurors could have found the State's evidence to exclude all reasonable hypotheses of innocence, and, indeed, we find that to be the case here. Mangum, 762 So.2d at 342(¶ 11). Therefore, we affirm the trial court's denial of Moses's motions for directed verdict.

II. WAS THE VERDICT OF THE TRIAL COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND DID THE TRIAL COURT ERR IN FAILING TO GRANT MOSES'S MOTION FOR JNOV?

STANDARD OF REVIEW
¶ 15. Two different standards of review apply to this issue. The standard of review for a motion for JNOV is the same standard applicable to motions for directed verdict, discussed more fully above. Gilmore v. State, 872 So.2d 744, 747(¶ 4) (Miss.Ct.App.2004). The standard of review for determining whether the verdict is contrary to the overwhelming weight of the evidence is whether the trial court abused its discretion in failing to grant a new trial. Id. at 748-49(¶ 10). We will reverse only when we find that allowing the verdict to stand "would sanction an unconscionable injustice...." Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002) (citations omitted).

DISCUSSION
¶ 16. The same analysis used in our previous discussion of the motions for directed verdict applies to the motion for JNOV raised in this issue. Therefore, we incorporate that discussion herein and find that the trial court did not err in denying Moses's motion for JNOV.
¶ 17. The argument regarding the weight of the evidence, however, implicates a different standard. Yet, this issue need not detain us long, because "[w]hen one challenges the weight of evidence, we must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Steen v. State, 873 So.2d 155, 159(¶ 8) (Miss.Ct.App.2004) (citing McDowell v. State, 813 So.2d 694, 699(¶ 20) (Miss.2002)). We have amply reviewed the evidence in our discussion of issue one above, and we find that, accepting as true the evidence which supports the verdict, we cannot say that the circuit court abused its discretion in failing to grant a new trial. Nor can we say that allowing the verdict to stand would sanction an unconscionable injustice.
¶ 18. Therefore, we affirm the trial court's denial of Moses's motion for judgment of acquittal JNOV or new trial.

III. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF MOSES'S PRIOR BAD ACTS?
¶ 19. Moses argues that the admission of evidence of prior bad acts and character evidence violated Rules 404 and 403 of the Mississippi Rules of Evidence and that the jury verdict would have been different if this evidence had been excluded. The State argues that the evidence was properly admitted under M.R.E. 404(b) to show such things as motive, opportunity, and absence of accident. The State argued further that the probative value of the evidence outweighed its prejudicial effect.

STANDARD OF REVIEW
¶ 20. We review the admission or exclusion of evidence for abuse of discretion. Gibson v. Wright, 870 So.2d 1250, 1258(¶ 28) (Miss.Ct.App.2004). In addition, we "will not reverse an erroneous admission or exclusion of evidence unless the error adversely affects a substantial *264 right of a party." Id. Employing this standard, we examine the trial court's ruling for abuse of discretion, and if we find an abuse of discretion we then inquire into the effect, if any, the ruling had on a substantial right of the party.

DISCUSSION
¶ 21. Moses and the State argued this evidentiary issue at some length through a motion in limine to exclude evidence of prior convictions for domestic abuse and evidence of other prior bad acts. The trial court ruled that the evidence was admissible with proper limiting instructions to the jury. Moses made continuing objection to the evidence during the course of the proceedings.
¶ 22. Having reviewed the record, we find that the trial court did not abuse its discretion in admitting the evidence of prior convictions for domestic abuse and evidence of other prior bad acts. Borrowing language from a similar case, we find that "[t]he testimony assigned as error here was not introduced to prove the character of [defendant], but to show the escalating level of violence, culminating in the crime of the murder. This was evidence of a continuing pattern of violence against the victim which resulted in her death, going towards [defendant]'s motive and intent." Moss v. State, 727 So.2d 720, 725(¶ 19) (Miss.Ct.App.1998). The trial court in this case made a similar ruling, accepting the State's argument that the evidence was offered for purposes allowed by M.R.E. 404(b) such as motive, opportunity, and lack of accident or mistake; and we can find no abuse of discretion in that ruling.
¶ 23. The trial court correctly noted, however, that the admission of this kind of evidence is a two step process. After having first determined that the evidence fit within one or more of the enumerated exceptions to the inadmissibility of character evidence found in M.R.E. 404(b), the trial court went on to weigh the probative value of the evidence against its prejudicial effect, pursuant to M.R.E. 403. Although the evidence was prejudicial, we can not find that the trial court abused its discretion in finding that the probative value of the evidence outweighed the possible prejudicial effect. Also, the trial court gave several limiting instructions to the jury regarding the permissible uses of the character evidence that was presented.
¶ 24. We find that the trial court amply considered the arguments of both sides and weighed the necessary factors under M.R.E. 403. After having found the probative value to outweigh the possible prejudicial effect, the trial court took additional steps, in the form of limiting instructions, to lessen any possible prejudicial effect.
¶ 25. We can find no abuse of discretion in the trial court's rulings on the M.R.E. 404(b) and 403 issues; therefore, we affirm the trial court's ruling admitting evidence of prior convictions and evidence of other prior bad acts.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.