# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01203-COA

**DERRELL MARCELL WILLIS A/K/A DERELL MARCELL WILLIS A/K/A DERELL WILLIS A/K/A DARRELL MARCELL WILLIS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2024 |
| TRIAL JUDGE: | HON. DINA RICHELLE LUMPKIN |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF STATE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Derrell Willis was arrested after being found in a vehicle containing numerous controlled substances and a firearm.  Following a trial, he was convicted of three counts of possession of drugs, with one including a trafficking conviction. The trial court dismissed the charge of possession of a weapon by a felon prior to the case going to the jury for deliberations.  On appeal, Willis argues that the jury was not properly instructed, the doctrine of retroactive misjoinder should apply, and the verdict was against the overwhelming weight of the evidence.  After review, this Court affirms.

**FACTUAL BACKGROUND**

¶2. On September 5, 2018, concerned citizens phoned 911 in Lamar County stating that a car was driving "reckless[ly] . . . on Oak Grove Road." The authorities responded to a driveway where the car was parked and found Derrell Willis in the driver's seat. A firearm and a variety of controlled substances were found in the car, and Willis was arrested. On November 7, 2019, Willis was indicted on two counts of possession of a controlled substance while in possession of a firearm, one count of possessing a weapon as a felon, and one count of trafficking a controlled substance while possessing a firearm.

¶3. Willis's trial took place on June 5, 2024. Before his trial began, the State amended the indictment to correct a scrivener's error (to allege the crimes occurred in 2018 rather than 2019) and reduce the fourth count (aggravated trafficking with intent to deliver or sell) to the lesser-included offense of possession or trafficking without intent to deliver or sell.[1]

¶4. The State first called Deputy Scott Wagner, an investigator with the Lamar County Sheriff's Office, to testify. On September 5, 2018, "some 911 callers" began calling the police's dispatch line to report a "reckless driver on Oak Grove Road" and "were keeping the dispatcher up to date." At some point, the callers updated dispatch to inform them that the vehicle was "pulling into a driveway." Deputy Wagner was in the area and responded to the home. He confirmed that the vehicle in the driveway matched the description given to the dispatcher.

¶5. Upon arrival, the deputy "observe[d] Mr. Willis in the driver's seat of the vehicle"

---

[1] Willis objected on the record to both proposed amendments.

2

alone, and the deputy "beg[a]n to speak to him." The deputy testified that as he approached the vehicle,

> Mr. Willis was reaching down, by his legs. Like, I looked closer, I could see a gun sticking up, wedged in between the seat and the center console, with the barrel down, with the grip of the gun sticking up. It was like a green-teal type gun, you know, easily seen. I immediately had Mr. Willis step out of the vehicle. Not knowing if the gun was loaded, I didn't want him to quickly grab it and it turn into a bad situation. So I had Mr. Willis just step out, away from the gun, as I talked with him. . . . [T]he driver's door [wa]s completely open. We're kind of by the back quarter panel of the vehicle.

The deputy obtained Willis's information and "r[a]n it through dispatch." The dispatcher "immediately" informed him that Willis had a felony conviction, so the deputy "immediately . . . knew that . . . [Willis was] not allowed to have th[e] firearm" in his vehicle.

¶6.     The deputy looked into the vehicle in the "pocket of the door[,] . . . just a little compartment in the door[, and] . . . there was a big brown paper bag that was partially opened." He could see that the bag "contain[ed] a bunch of pills," which "appear[ed] to be in . . . little plastic bags in there[.]" Deputy Wagner explained that the image was "something that I generally know to be illegal narcotics" as a law enforcement officer. He obtained the illegal weapon and the paper bag and found:

> [T]wo smaller plastic sandwich-type bags. Two of them had white pills in it. And then, there were two more sandwich-style bags that had blue pills in it. And then, there was a fifth plastic bag that had some crystal meth in it, methamphetamine in it.

The deputy also "observed a meth pipe on the floorboard where Mr. Willis'[s] feet would have been." He also saw "burned meth residue in the bulb of the pipe, like it had obviously been used before, smoking dope."

3

¶7. As the deputy continued collecting those items in the vehicle as evidence, Willis "comment[ed] on the items . . . at his free will." Willis explained that some of the items were his "prescriptions" prescribed to him after he "got [his] leg amputated." The deputy also testified that once the investigation started "wrapping up[,]" the registered owner of the vehicle, Casey Purvis, arrived at the scene. She stated that it "was her driveway that [Willis] had pulled into and said [Willis] was her boyfriend." The deputy confirmed the vehicle belonged to Purvis and began to "r[u]n a report through the Mississippi Prescription Monitoring Programs" to verify Willis's claims that he was prescribed the pills he was carrying. Willis was not prescribed any of the medications or drugs that were in the vehicle.

¶8. The State entered a photo of the items retrieved, the physical drugs in baggies, and the firearm that was in the vehicle with Willis. The State also entered a copy of an adjudication order for Willis, stating he was guilty of credit card fraud and consequently adjudicated a felon.

¶9. The State also called Archie Nichols with the Mississippi Forensics Laboratory to testify. Nichols was designated as an expert witness in the identification of controlled substances. The substances discovered in Willis's vicinity were submitted to the forensics lab, and Nichols "performed an instrumental analysis and a literature reference" on the substances. He determined that the substances collected from the vehicle were made up of 0.65 grams of methamphetamine, 115 dosage units of Alprazolam, and 117 dosage units of heroin mixed with fentanyl.

¶10. At the close of the State's case-in-chief, Willis motioned for a directed verdict,

4

arguing insufficient proof for Counts I, II, and IV. The State presented its own argument, and the trial judge denied the motion. Willis also argued for a directed verdict as to Count III, because there had been a discrepancy in dates regarding Willis's prior adjudication and his status as a felon.[2] The State agreed with Willis, and the trial judge granted that motion for a directed verdict on Count III, possession of a firearm by a convicted felon. Willis then rested his case. The jury found Willis guilty of all remaining charges.

¶11. The trial court conducted a sentencing hearing for Willis and entered its sentencing order on June 17, 2024. Willis was sentenced to ten years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and five years to serve, and five years of post-release supervision (PRS) for Count I. The court sentenced Willis to eight years in MDOC custody, with three years suspended and five years to serve, and three years of PRS for Count II, set to run concurrently with the sentence for Count I. As for Count IV (now Count III with the dismissal of the third charge), Willis was sentenced to forty-four years in MDOC custody, with fourteen years suspended and thirty years to serve, and fourteen years of PRS, set to be served consecutively to his sentences for Counts I and II.

¶12. On June 19, 2024, Willis filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. On October 18, 2024, a hearing was held on Willis's motion, and Willis renewed his previous arguments from trial. Additionally, Willis argued that he received an excessive sentence on Count I, ten years, because the maximum was six years. The State conceded to this argument. The trial court entered an order granting in part

---

[2] The counts were renumbered accordingly.

5

Willis's motion pertaining to the excessive sentence and denying in part the other portions of the motion. An amended sentencing order reflecting that determination was entered on November 6, 2024, and his sentence for Count I was amended to be a term of six years in MDOC custody, with one year suspended and five years to serve, and one year of PRS. On October 28, 2024, Willis appealed.

## ANALYSIS

¶13.    On appeal, Willis argues: (1) the trial court erred by failing to instruct the jury on the essential elements of possession; (2) retroactive misjoinder entitles Willis to a new trial; and (3) the verdict was against the overwhelming weight of the evidence.

### I.    Jury Instructions

¶14.    Willis first contends that the jury was not properly instructed on the possession charges against him. The possession statute, Mississippi Code Annotated section 41-29-139(c) (Rev. 2022), reads in relevant part that "it is unlawful for any person knowingly or intentionally to possess . . ." the substances in the vehicle with Willis. The elements instructions given to Willis's jury provide that he "did have in his possession or under his conscious control[,]" omitting the phrase "knowingly and intentionally[.]"

¶15.    The record in Willis's case does not contain a transcript of the parties' jury instruction conference, thus preventing us from knowing whether Willis objected. Willis argues that the issue should be reviewed under the plain-error doctrine. "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice." *Rodgers v. State*, 166 So. 3d

6

537, 544 (¶15) (Miss. Ct. App. 2014) (citing *Flora v. State*, 925 So. 2d 797, 811 (¶42) (Miss. 2006)). "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Simmons v. State*, 411 So. 3d 185, 189-90 (¶10) (Miss. Ct. App. 2024) (quoting *Nelson v. State*, 284 So. 3d 711, 716 (¶18) (Miss. 2019)), *cert. denied*, 408 So. 3d 1274 (Miss. 2025). "Jury instructions **are to be read together as a whole, with no one instruction to be read alone or taken out of context**." *Id.* (emphasis added). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id.*

¶16. While the jury's element instructions stated "under his conscious control" rather than "knowingly and intentionally," to resolve the issue raised in this appeal we must look at the other given jury instructions. Notably, the jury was also given the following two instructions:

[(1)]
The court instructs the jury that to constitute "possession" as applied to this case, it is not necessary that the state prove actual physical possession; it is sufficient if the state establishes that the firearm, alprazolam, heroin and methamphetamine involved was **subject to the defendant's dominion and control**, and that he was **aware or reasonably should have been aware**, of its presence.

[(2)]
Possession of a controlled substance may be actual or constructive. To establish constructive possession of controlled substances, the State must prove, beyond a reasonable doubt, sufficient facts to warrant a finding that the Defendant, DERELL MARCELL WILLIS was aware of the presence and character of the controlled substance and **that he was intentionally and consciously in possession of the controlled substance**. Proximity to the substance is usually an essential element but, by itself, is not adequate to prove constructive possession of a controlled substance in the absence of other incriminating circumstances proved beyond a reasonable doubt by the State.

(Emphasis added). Again, jury instructions are "to be read **as a whole**, with no one

7

instruction to be read alone or taken out of context." *Jackson v. State*, 394 So. 3d 420, 434 (¶54) (Miss. Ct. App. 2024) (emphasis added) (quoting *Jenkins v. State*, 371 So. 3d 593, 596 (¶17) (Miss. 2023)). The jury was certainly instructed of the "knowingly and intentionally" elements when the instructions are read as a whole. We find the trial court did not err or abuse its discretion by giving the jury instructions when read as a whole. Therefore, there was no manifest miscarriage of justice. This issue is without merit.

## II.     Retroactive Misjoinder

¶17.    Willis also argues that the doctrine of retroactive misjoinder entitled him to a new trial. "Retroactive misjoinder occurs when a trial or appellate court determines that while joinder of two or more counts against a defendant was initially proper, one or more of those counts should be vacated." *Jones v. State*, 316 So. 3d 217, 222 (¶18) (Miss. Ct. App. 2021) (quoting *Reynolds v. State*, 227 So. 3d 428, 433-34 (¶23) (Miss. Ct. App. 2017)). We "will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion." *Sheffield v. State*, 749 So. 2d 123, 127 (¶16) (Miss. 1999) (quoting *Gleeton v. State*, 716 So. 2d 1083, 1087 (¶9) (Miss. 1998)).

¶18.    Willis bases his argument on his charge of possessing a firearm while being a felon. At the close of the State's case, the trial judge granted a directed verdict to Willis on this individual count because there was insufficient proof that Willis was a felon at the time of the offense. Now, by claiming retroactive misjoinder, Willis must: "(1) show that evidence was admitted at trial on the vacated count that would not have otherwise been admissible on the remaining count and (2) demonstrate clear prejudice as a result of the inadmissible

8

evidence that was presented to the jury." *Reynolds*, 227 So. 3d at 434 (¶26) (citing *Williams v. State*, 37 So. 3d 717, 721 (¶10) (Miss. Ct. App. 2010)). The State concedes that the evidence pertaining to Willis's past credit card fraud was admitted to prove his prior felony conviction but would otherwise have been inadmissible. Specifically, Deputy Wagner mentioned the fraud during his testimony while recounting the events leading up to Willis's arrest, after which the State introduced an order of adjudication of credit card fraud into evidence.

¶19. But we must determine whether that evidence caused Willis "clear prejudice." *Id.* This Court analyzes "[t]he strength of the State's case against the defendant on the remaining counts, the specific evidence presented in connection with the vacated count, and other pertinent details of the defendant's case and trial" when "determining if the defendant was prejudiced." *Brent v. State*, 247 So. 3d 367, 371 (¶15) (Miss. Ct. App. 2018) (quoting *Reynolds*, 227 So. 3d at 434 (¶26)). The strength of the State's case against Willis cannot be ignored. Willis was found in a vehicle with meth, a previously used meth pipe, heroin, fentanyl, and a firearm. As the deputy recounted in his direct examination, Willis made comments as all these items were retrieved from the vehicle, admitting that the contraband belonged to him and claiming that he was prescribed the medications. Additionally, the State contends that the charges of possession and credit card fraud are of a "dissimilar nature," and thus it was unlikely that the jury used the fraud conviction as reasoning for convicting Willis of the possession charges. We agree. Accordingly, this Court finds no abuse of discretion on the part of the trial judge for denying Willis's motion for a new trial due to retroactive

9

misjoinder.

### III. Weight of the Evidence

¶20. Finally, Willis asserts that the jury's verdict was against the overwhelming weight of the evidence, which shares the standard of review that our retroactive misjoinder utilizes. "The standard of review for determining whether the verdict is contrary to the overwhelming weight of the evidence is whether the trial court abused its discretion in failing to grant a new trial." *Moses v. State*, 893 So. 2d 258, 263 (¶15) (Miss. Ct. App. 2004) (citing *Gilmore v. State*, 872 So. 2d 744, 748-49 (¶10) (Miss. Ct. App. 2004)). In other words, "an appellate court will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice." *Hunt v. State*, 81 So. 3d 1141, 1146 (¶19) (Miss. Ct. App. 2011) (citing *Ivy v. State*, 949 So. 2d 748, 753 (¶21) (Miss. 2007)).

¶21. As recounted previously, the jury was given several pieces of evidence in support of Willis's guilt. Authorities were notified that a car was driving recklessly, and the deputy responded to those reports. When he tracked the subject vehicle in a driveway, he discovered Willis was in the driver's seat with a firearm within his reach. After asking Willis to step out of the car, the deputy found a recently used meth pipe, 0.65 grams of meth, 115 dosage units of Alprazolam, and 117 dosage units of heroin combined with fentanyl. Willis did not deny that the drugs belonged to him; instead, he stated that he had prescriptions for all of them. The jury heard testimony from the deputy as well as the forensics scientist identifying each of the drugs. They were also shown photos of the drugs in baggies and one of the firearm.

¶22. It does not matter whether the members of this Court would find Willis guilty of the charged crimes from that presented evidence. "As an appellate court, we do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Beasley v. State*, 362 So. 3d 112, 125 (¶45) (Miss. Ct. App. 2023) (quoting *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)). In other words, "our role as an appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* Viewing the evidence against Willis in the light most favorable to the verdict, this Court does not find the jury's verdict so contrary to the overwhelming weight of the evidence that unconscionable injustice results by allowing it to stand.

**CONCLUSION**

¶23. In sum, this Court finds the jury was properly instructed, the doctrine of retroactive misjoinder does not apply, and the jury's verdict was not against the overwhelming weight of the evidence.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**