ROBERTS, J.,
for the Court:
¶ 1. Jackson Williams, Jr., appeals his convictions in the Circuit Court of Tunica County of aggravated assault and possession of a weapon by a convicted felon. In June 2008 Williams stabbed Edward Walls with a pocket knife. There was no dispute that the stabbing occurred and that Williams was a convicted felon; however, the facts leading up to the stabbing were contested at trial. Williams claimed that Walls was assaulting him, and he was defending himself when he stabbed Walls. However, Walls’s version of events was that he was simply speaking with Williams when Williams stabbed him without provocation. Williams was subsequently indicted, tried, and convicted of the charges stated above.
¶ 2. On appeal, Williams makes two claims of error. He argues, as he did twice before at trial through motions for a directed verdict, that the evidence pertaining to the felon-in-possession charge was insufficient to sustain a guilty verdict, as the pocket knife used in the stabbing was not a prohibited weapon as listed by Mississippi Code Annotated section 97-37-5(1) (Supp.2009). Secondly, proceeding under the assumption that he is correct under Issue I, Williams argues that the admission into evidence of his prior felony conviction prejudiced his defense on the remaining charge of aggravated assault. We find that both of Williams’s arguments are correct. As such, we reverse and remand for a new trial as to Count I, aggravated *719 assault, and we reverse and render as to Count II, felon in possession of a weapon.
FACTS AND PROCEDURAL HISTORY
¶ 3. On June 21, 2008, Williams stabbed Walls in the abdomen with a pocket knife. After speaking with witnesses at the scene, Detective William Mullen with the Tunica County Sheriffs Department went to Williams’s residence. There he found Williams and Arthur Love, a friend of Williams and witness to the majority of the altercation. As a result of a pat-down search of Williams, Detective Mullen discovered a small pocket knife with red stains on it. At this point, Williams admitted to having used the knife on Walls. Additional facts will be discussed in the analysis, as needed.
¶ 4. Williams was indicted on two counts. Count I alleged that Williams had committed the aggravated assault of Walls pursuant to Mississippi Code Annotated section 97 — 3—T(2)(b) (Supp.2009), and Count II alleged that Williams was a convicted felon in possession of a knife pursuant to section 97-37-5. A trial was held in the Circuit Court of Tunica County on April 20, 2009, during which Williams agreed to a stipulation that he was a convicted felon. At the close of the State’s case-in-chief, Williams moved the trial court for a directed verdict as to both counts. The trial court denied Williams’s motion as to the charge of aggravated assault, but the court withheld its ruling with regard to Count II. At the conclusion of his case, Williams renewed his motion for a directed verdict as to Count II, arguing that the pocket knife used in the altercation was not one of the types of knives listed in section 97-37-5. However, the trial court ultimately denied the motion. The jury subsequently found Williams guilty of both counts. The trial court sentenced Williams to a term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC) and five years of post-release supervision on Count I, and five years in the custody of the MDOC on Count II, with the sentence in Count II to run concurrently with the sentence in Count I.
DISCUSSION
I. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUSTAIN THE JURY’S VERDICT IN COUNT II.
¶ 5. Williams was indicted and found guilty of violating section 97-37-5(1), which states the following:
It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife ... unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.
On appeal, Williams argues that there was insufficient evidence presented at trial to support a guilty verdict on this count as the pocket knife used in the altercation is not one of the weapons that the statute deems unlawful for a convicted felon to possess. The knife was introduced in evidence during trial, and according to descriptions elicited in the record, the knife is a small ordinary pocket knife with a two-and-a-half-inch blade.[1] Although a rare occasion, the State agrees with Williams’s interpretation of the statute and concedes that the knife could not be de *720 scribed as a knife prohibited from possession by a felon by section 97-87-5(1); therefore, the State asserts there was insufficient evidence to support Williams’s conviction on Count II. We agree. Therefore, we reverse and render as to Williams’s conviction and sentence on Count II.
II. WHETHER THE ADMISSION INTO EVIDENCE OF WILLIAMS’S PRIOR FELONY CONVICTION WAS IMPROPER AND PREJUDICIAL.
¶ 6. Williams argues that as there was insufficient evidence to sustain a verdict under Count II, the introduction of evidence of his prior felony conviction was improper and prejudicial. The State argues that Williams is procedurally barred from making this argument because he stipulated to the fact that he was a convicted felon, and Williams did not further argue at trial that if the motion for a directed verdict on Count II was granted that the stipulation was improper or prejudicial. Additionally, the State argues that the admission of the stipulation was within the discretion of the trial court, and the record does not indicate that Williams was prejudiced by its admission.
¶ 7. Essentially, although he does not name it as such, Williams asks this Court to adopt what some courts have labeled “retroactive misjoinder” or “spillover prejudice.” We have been unable to find any precedent in Mississippi jurisprudence on the subject; however, other jurisdictions have addressed this issue. Retroactive misjoinder “occurs when joinder of multiple counts was initially proper but, through later developments such as an appellate court’s reversal of less than all convictions, joinder has been rendered improper.” State v. McGuire, 204 Wis.2d 372, 556 N.W.2d 111, 114 (Wis.App.1996) (citing United States v. Vebeliunas, 76 F.3d 1283, 1293 (2d Cir.1996)); see also United States v. Deitz, 577 F.3d 672, 693 (6th Cir.2009); United States v. Arledge, 553 F.3d 881, 895-96 (5th Cir.2008); United States v. Cross, 308 F.3d 308, 317 (3d Cir.2002); United States v. Prosperi, 201 F.3d 1335, 1345 (11th Cir.2000); United States v. Aldrich, 169 F.3d 526, 528 (8th Cir.1999); United States v. Parker, 604 F.2d 1327 (10th Cir.1979) (overruled on other grounds).
¶ 8. The two tests generally employed to determine whether retroactive misjoinder exists vary slightly between the federal circuits, but both tests center around the same inquires. A majority of other jurisdictions that have faced this issue use a two-factor test that asks “whether any of the evidence used to prove the reversed count would have been inadmissible to prove the remaining count.” Cross, 308 F.3d at 318; see also Prosperi, 201 F.3d at 1345; Arledge, 553 F.3d at 896; United States v. Larson, 978 F.2d 1021, 1025 (8th Cir.1992). If the answer is “yes,” then it must be determined “whether the verdict on the remaining count was affected adversely by the evidence that would have been inadmissible at a trial limited to that count.” Id. The Second Circuit Court of Appeals employs three factors and asks: (1) whether the evidence introduced to support the dismissed count is of such an inflammatory nature that it would have tended to incite the jury to convict on the remaining count; (2) the degree of overlap and similarity between the evidence pertaining to the dismissed count and that pertaining to the remaining count, i.e., would the evidence have been admissible under both counts; and (3) the strength of the case on the remaining count. Vebeliunas, 76 F.3d at 1294.
¶ 9. As noted above, this is an issue of first impression. Therefore, after con *721 sideration of the doctrine of retroactive misjoinder and the tests used by those jurisdictions that recognize it, we adopt the doctrine of retroactive misjoinder and conclude that it occurs when a trial or appellate court determines that while join-der of two or more counts against a defendant was initially proper, one or more of those counts should be vacated. Furthermore, if the defendant can show that he suffered clear and compelling prejudice as a result of the evidence introduced to support the vacated count, he is entitled to a new trial on the remaining count(s).
¶ 10. Both tests employed by the various other courts to determine if a defendant was prejudiced essentially ask the same questions. As such, the method we adopt as the proper way of determining if a defendant was prejudiced is a modified two-factor analysis that addresses these questions. That is, we ask the following: (1) was evidence admitted at trial on the vacated count that would not have otherwise been admissible on the remaining count and, if so, (2) can the defendant demonstrate clear prejudice as a result of the inadmissible evidence that was presented to the jury. In making this determination, the specific facts and circumstances surrounding the defendant’s trial are vitally important as a finding of prejudice will vary from case to case. The strength of the State’s case against the defendant on the remaining count, the specific evidence presented in connection with the vacated count, and other pertinent details of the defendant’s case and trial should be analyzed in determining if the defendant was prejudiced. Applying this test in the present case, we conclude that Williams was clearly prejudiced during his trial as a result of the inclusion of his prior felony conviction into evidence.
¶ 11. Our first inquiry is whether the evidence of Williams’s prior conviction would have been admissible to prove the Count of aggravated assault. Williams’s stipulation, which was read to the jury, stated that as of the date of the altercation with Walls, Williams was a convicted felon. The record reveals that Williams’s conviction was for second-degree murder in Shelby County, Tennessee, to which he pled guilty in 1984. It is clear that Williams’s prior conviction would not have been admissible under any rule of evidence given the type of crime he was convicted of and when he was convicted in Tennessee, when filtered through Rule 403 of the Mississippi Rules of Evidence.
¶ 12. As Williams’s prior conviction would not have been otherwise admissible during the prosecution’s case-in-chief regarding Count I, we must now determine whether Williams was prejudiced by the inclusion of that evidence. The Tenth Circuit Court of Appeals was faced with a similar circumstance in Parker. In that case, Don Allen Parker was convicted of assaulting a police officer and possession of a weapon by a felon. Parker, 604 F.2d at 1328. On appeal, the appellate court determined that Parker’s prior “conviction” was not a conviction as defined by the statute criminalizing possession of a weapon by a felon. Id. at 1329. The court held that:
Because evidence of the prior conviction was heard by the jury, the guilty verdict on the assault charge must also be reversed. No independent ground supports the admissibility of the evidence of the Oklahoma proceedings against defendant. See Fed.R.Evid. 404(b), 609. Improper admission of evidence of a pri- or crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself.
*722 Id. Given the particular circumstances of Williams’s trial, we come to the same conclusion as the court in Parker.
¶ 13. The evidence presented at trial in support of the State’s charge of aggravated assault included an admission from Williams, in which Williams stated that he did, in fact, stab Walls. However, whether or not Williams stabbed Walls was not the central issue that the jury was forced to decide; the issue for the jury was whether Williams acted in necessary self-defense. The sole witness the prosecutor called to the stand who had direct knowledge of the incident was the victim, Walls, who was thirty-eight years old at the time of trial. Walls was questioned as to his recollection of the altercation. He testified that he:[2]
was walking down Sears Avenue, approaching Mayhan Street ... when I saw Mr. Jackson Williams, this distinguished gentleman over here to my right.
And he had been picking at me with the police, lying on me, saying that I was kickin’ his doors in, kickin’ his windows in. Just lyin’. And never could produce no evidence, because it didn’t happen.
Me bein’ a Christian man, I — when I saw him, if I have it off against somebody, to go up to him and talk to him. So I questioned him and said, “Mr. Jackson, why are you constantly lyin’ on me to the police when you know none of this is true?”
And he told me to go F myself.
And I said, “Mr. Jackson, I fed you at my store. I gave you hot dogs and sandwiches and Ding Dongs when you didn’t have any money after you’d gotten high. I — I help you.”
And it went on, and told me and said, “I don’t like you, you B-I-T-C-H.”
At this time, after he had been threatening to go back, file some more charges on me, he stabbed me with the knife, twisted the knife....
¶ 14. Following Walls’s testimony, Williams’s trial counsel moved the trial court for a directed verdict on both counts based upon the argued lack of evidence of aggravated assault and the fact that possession of the pocket knife Williams used was not a criminal offense as a convicted felon. The trial court took the issue of whether section 97-37-5(1) prohibited a convicted felon from possessing a pocket knife under advisement, but the trial court denied the remaining requested relief.
¶ 15. The defense then called the first of its two -witnesses, Love. Love testified that he was driving back from the store and saw Williams and Walls. Love stopped the vehicle, and Williams tried to get in on the passenger side because Walls was hitting him with a blackjack or slapstick.[3] Love stated that Walls hit Williams “quite a few times.” Love testified that he-saw Williams move toward Walls; Walls then backed off; and Williams got in the truck. Love and Williams then drove to Williams’s house. Love stated that later he found out the altercation was over a woman.
¶ 16. Detective Mullen testified that he searched the truck and did not discover any weapon. However, during Love’s cross-examination, Love stated that the day after the altercation, he found the blackjack Walls allegedly had used. The *723 prosecutor then asked Love why he did not mention the blackjack or the fact that Walls was attacking Williams when he gave his written statement, which was taken shortly after the altercation had occurred. Love stated that he told Detective Mullen about the altercation when he was questioned in Williams’s home, but he did not explain why 'it was not in his written statement. Further, Love said that he did not see what Walls was using to hit Williams during the altercation, but once he found the blackjack in his truck, he knew it was Walls’s.
¶ 17. Williams was next to testify. He stated he was sixty-four years old at the time of the altercation. Williams explained that he had hired a woman to assist him because he had prostate cancer. According to Williams, Walls developed a romantic relationship with her. He claimed ' that when the relationship between Walls and the woman ended, Walls would still come to Williams’s house to see her, cause disturbances, trespass, and vandalize his property in an attempt to talk to her. As a result, Williams called the police on several occasions and had to file criminal charges against Walls on numerous times.
¶ 18. Williams testified that on the day of the incident, he left his house with the intention- of buying a pack of cigarettes at the store. As he left his home, Williams saw Walls sitting on his neighbor’s porch, but he did not speak to him. When he had almost reached the store, Williams saw that Walls was running behind him. As Walls reached him, Williams tried to get into Love’s vehicle because he wanted to avoid confrontation, but the car’s door was locked. Williams testified that at this point, Walls began hitting him with a blackjack. Williams claimed that he blocked several of Walls’s swings with his hand, but he was eventually forced to stab Walls to defend himself from great bodily harm at the hands of the much younger Walls.
¶ 19. On cross-examination, Williams was asked why the photograph Detective Mullen took of Williams’s hand did not show any sign of trauma. Williams stated that his hand was blue for a week after the fight, and Detective Mullen had taken a picture of the wrong side of his hand. However, Detective Mullen was called as a rebuttal witness once the defense had rested. He testified that Williams only claimed that his left hand was injured, and he did not see any indication of blood on either side of Williams’s hand when he took the picture. At the conclusion of all testimony, Williams’s trial attorney renewed his motion for a directed verdict. After additional argument from both sides, the trial court denied Williams’s motion.
¶ 20. The trial court then read the agreed-upon jury instructions to the jury. Among them was the following instruction, “The Court instructs the jury [that] the State and defendant stipulate that [the] defendant is a convicted felon as [of] the date of June 21 of 2008.” The stipulation was also read to the jury by the trial judge during the State’s case-in-chief. Additionally, during the State’s closing argument, the prosecutor stated: “Now, you all heard the Judge read, both right after we came back from lunch and during these jury instructions, that the two sides stipulate ... so we’re not gonna put on any more proof. But we agree[,] and y’all can know that he is a convicted felon. It’s already somethin’ (sic) that neither side will contend. Contest. He is convicted (sic). There’s no question about it. So he is convicted (sic) and he had the — has the knife.”
¶ 21. Once the trial court’s judgment was filed, Williams filed a motion for a judgment notwithstanding the verdict or, *724 in the alternative, a new trial in which he argued, among other points of error, that the trial court erred in denying his two motions for a directed verdict. However, the trial court ultimately denied the motion. A new trial may be granted “[i]f required in the interests of justice.” URCCC 10.05(1). As is clear, the jury was repeatedly reminded that Williams was a convicted felon. Additionally, the jury was neither instructed to consider Williams’s prior conviction solely in consideration of the felon-in-possession count nor was it instructed to consider each count separately. The jury was faced with the following testimony: Walls claimed he was the good neighbor who had been maliciously attacked by Williams; Williams and Love testified that Williams was defending himself when he stabbed Walls; and Detective Mullen pointed out some inconsistencies with Williams’s version of events, but he also testified that there were two other individuals who gave statements that Williams had been assaulted.[4]
¶ 22. Needless to say, in terms of Williams’s claim of self-defense, it was a close case. Williams’s credibility as a witness, in our judgment, was substantially eroded when the trial judge, not once, but twice told the jury that he had previously been convicted of a felony offense. Given our holding in Issue I that there was insufficient evidence to sustain Williams’s conviction under Count II, the jurors should have never known of Williams’s twenty-five-year-old prior felony conviction. We find that as a result of the particular circumstances of this case, and the lack of limiting instructions on Williams’s stipulation to being a convicted felon, the jury’s knowledge of his prior felony conviction clearly prejudiced him and his claim of self-defense on the remaining charge of aggravated assault. Accordingly, we find that in the interests of justice demand that he be afforded a new trial. As such, we reverse Williams’s convictions and remand for a new trial on Count I.
¶ 23. Although the separate opinion concurring in part and dissenting in part (hereinafter the dissent) agrees that Williams’s conviction and sentence on Count II should be reversed and rendered, the opinion expresses some reservations with the majority’s resolution of Williams’s appeal of his conviction and sentence on Count I. First, the dissent states that Williams should be procedurally barred from complaining that his stipulation that he was a convicted felon prejudiced him on Count I and “should now be required to accept the full measure of what his counsel’s tactical skills have wrought.” However, the alternative would have been for Williams to contest the fact that he was a convicted felon, which would have allowed the State to present the jury with properly authenticated and certified copies of Williams’s prior judgment of conviction for second-degree murder in Tennessee thereby revealing the specific details of Williams’s conviction. We cannot fault Williams’s trial counsel’s “Hobson’s choice” in attempting to minimize the damage done as a result of the trial court’s failure to recognize that Count II, and by extension Williams’s prior felony conviction, should have never been presented to the jury in the first place.
¶ 24. The dissent states that this Court is obliged to follow the direction of the Fifth Circuit Court of Appeals. However, this Court is not required to follow a federal court’s application of state law. In furtherance of that proposition, the dissent argues that Parker is at odds with Arledge. However, such is not the case. As *725 noted above, the Parker court reversed Parker’s conviction as a result of the admission of evidence of a prior conviction when, in fact, Parker had not been “convicted” as defined by the applicable state statute. Parker, 604 F.2d at 1329. The Parker court found that: evidence of Parker’s “conviction” was heard by the jury; it should not have been; no other grounds for admission of the “conviction” were present; and its admission was “plain error impinging on the fundamental fairness of the trial itself.” Id. The dissent claims that the following statement by the Fifth Circuit in Arledge:
No rule of evidence is violated by the admission of evidence concerning a crime of which the defendant is acquitted, provided the crime was properly joined to the crime for which he was convicted and the crimes did not have to be severed for purposes of trial. It makes no difference, moreover, whether the jury acquits on some counts or the trial or reviewing court sets aside the conviction.
stands for that court’s pronouncement of the standard for retroactive misjoinder. Arledge, 553 F.3d at 895-96. We disagree.
1125. In Edwards, which was the first opportunity that the Fifth Circuit Court of Appeals had to opine on the doctrine of retroactive misjoinder, the court quoted the above passage from a Seventh Circuit Court of Appeals case in an attempt to compare how several circuits viewed the argument. United States v. Edwards, 303 F.3d 606, 640 (5th Cir.2002). The Edwards court then stated its interpretation of the doctrine of retroactive misjoinder as:
While we are willing to acknowledge that perhaps a grant of a new trial might be appropriate in some cases of “retroactive misjoinder,” that case is not before us. At a minimum, drawing from our severance cases and authority from other circuits, the defendants must show that they experienced some prejudice as a result of the joinder of the invalid claims[.]
Id. In Arledge, the Fifth Circuit Court of Appeals simply reiterated its test for retroactive misjoinder by stating:
“At a minimum, ... defendants must show that they experienced some prejudice as a result of the joinder of invalid claims, i.e., that otherwise inadmissible evidence was admitted to prove the invalid fraud claims.” [Edwards, 303 F.3d] at 640. We have stated that Edwards requires the defendant demonstrate both that the “evidence was inadmissible and [that it was] prejudicial.” Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d 1150, 1170 nn. 18 & 19 (5th Cir.2006) (citing United States v. Cross, 308 F.3d 308, 319 (3d Cir.2002) (recognizing that courts must “conduct two distinct inquiries. First, was there a spillover of evidence from the reversed count that would have been inadmissible at a trial limited to the remaining count? Second, if there was any spillover, is it highly probable that it did not prejudice the jury’s verdict on the remaining count, i.e., was the error harmless?”)).
Arledge, 553 F.3d at 896. While the language in Parker and Arledge are admittedly not word-for-word, they stand for the same meaning. That is, as we stated above, the doctrine of retroactive misjoin-der occurs when “a trial or appellate court determines that while joinder of two or more counts against a defendant was initially proper, one or more of those counts should be vacated. Furthermore, if the defendant can show that he suffered clear and compelling prejudice as a result of the evidence introduced to support the vacated count, he is entitled to a new trial on the remaining count(s).” Therefore, the test *726 the majority has adopted does track not only the Fifth Circuit’s approach, but the approach followed by the majority of those courts that have addressed the issue as well.
¶ 26. Additionally, the dissent is accurate in its observation that the facts of Parker are distinguishable from those of the instant case. However, the fact that, as the dissent points out, “Williams’s prior felony conviction is valid ... unlike the defendant in Parker ” is irrelevant in terms of the application of the doctrine of retroactive misjoinder. Nevertheless, it is true that the jury in Parker was informed of the details of the charge upon which Parker previously had been “convicted” of, and such information was not disclosed to the jury in the instant case. Parker, 604 F.2d at 1328. However, such a factual difference fails to demonstrate that Williams did not suffer prejudice as a result of the jury erroneously being informed of his prior conviction, but that the prejudice Parker suffered was that much more egregious.
¶ 27. The dissent concedes that Williams’s prior felony conviction could not have been mentioned under any circumstances if Williams had been tried solely upon Count I, and rightly so. Not only would evidence of Williams’s prior conviction have been inadmissible under Rule 609 of the Mississippi Rules of Evidence as he was convicted in 1984, which is well past the ten-year limit of 609(b), but it is clear that the probative value of his prior conviction is completely overshadowed by the prejudicial effect that it has. Speaking to the prejudicial effect, the dissent apparently argues that Arledge stands for the proposition that prejudice may only come in the form of “the prosecution improperly or inappropriately us[ing] the fact that [Williams] is a convicted felon ...,” and that the record does not show that occurred. However, it is nonsensical to suggest that prejudice from an erroneous admission of a prior felony conviction can only result from prosecutor misconduct. As the United States Supreme Court has noted, such evidence “weights] too much with the jury and ... overpersuade[s][it] as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.” Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).
¶ 28. The dissent further argues that the majority’s holding is at odds with Arledge as this Court’s holding presumes prejudice and does not allow for a harmless-error analysis. However, Williams has demonstrated prejudice. Prejudice is not shown from the sole act of informing the jury that he was a convicted felon, but from the totality of the facts and circumstances present during his trial that led to the jury’s guilty verdict. The Arledge court was simply not faced with the situation of evidence of a defendant’s prior felony conviction being improperly presented to the jury. The Fifth Circuit examined whether the evidence of Robert Arledge’s lavish lifestyle that was properly admitted under several money-laundering counts, all of which were either later withdrawn by the Government or on which the jury acquitted Arledge, prejudiced Arledge on the remaining charges of conspiracy, mail fraud, and wire fraud. Arledge, 553 F.3d at 895. Arledge alleged that he was prejudiced because the jury did not have a similar lifestyle and found Arledge’s lifestyle offensive. Id. As a result of the prosecutor taking no action to use such evidence against Arledge to bias the jury and a demonstration that the jury was not influenced by the evidence of Arledge’s wealth, the Arledge court found no prejudice. Id. at 896.
*727 ¶ 29. With due respect to the dissent, evidence of a lavish lifestyle is a far cry from the inherently prejudicial nature of evidence of a prior felony conviction. Although the probative value of such evidence can outweigh its prejudicial nature at times, the very mention of a previous felony conviction has a prejudicial effect. To find that informing the jury of Williams’s prior conviction did not prejudice Williams, the dissent must come to the conclusion that admitting evidence of Williams’s prior conviction was harmless error. Given the facts before this Court, such cannot be the case.
¶ 30. In DeLoach, the supreme court found that the trial court erred in allowing the State to impeach Bobby Ray DeLoach during his cross-examination with evidence of a prior felony conviction without first determining whether the probative value of the evidence outweighed its prejudicial effect. DeLoach v. State, 722 So.2d 512, 520 (¶ 33) (Miss.1998). However, the supreme court ultimately found the error to be harmless as a result of the overwhelming evidence against DeLoach. Id. at (¶ 34). DeLoach was the only witness to testify for the defense, and his testimony provided no defense or excuse to the charge of possession of cocaine. Id. at 515 (¶¶ 9-10).
¶ 31. Although the error is present in the instant case as it was in DeLoach, the error in the instant case was not harmless. In DeLoach, the supreme court stated:
The basic test for harmless error in the federal constitutional realm goes back to Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 710 (1967). The Chapman test is whether it appears “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” ([quoting] Yates v. Evatt, 500 U.S. 391, 392, 111 S.Ct. 1884, 1886, 114 L.Ed.2d 432, 448 (1991)[)]. The Yates Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was “unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.” Yates, 500 U.S. at 403, 111 S.Ct. at 188[7].
Id. at 520 (¶ 34). Williams admitted that he did, in fact, stab Walls. That point was not contested at trial. However, he claimed that he did so in necessary self-defense. The supreme court has stated that “[t]he issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury.” Wade v. State, 748 So.2d 771, 774 (¶ 11) (Miss.1999). Given that the evidence presented to the jury did not amount to much more than a swearing match between Williams and Walls, the credibility of both individuals was of the utmost importance to Williams’s defense. Furthermore, additional facts surrounding Williams’s trial tipped the scales of justice that much more toward prejudice. These include the repeated mentioning of Williams’s prior felony conviction by the trial court and the State, the complete lack of any limiting instruction informing the jury that it shall only consider his prior conviction under Count II, and the lack of an abundance of evidence that Williams did not act in self-defense. It cannot be said beyond a reasonable doubt that the erroneous admission of Williams’s prior conviction did not contribute to the jury’s final verdict. Furthermore, while it was certainly irrelevant to the aggravated-assault charge against Williams, evidence of his prior conviction was far from “unimportant in relation to everything else the jury considered on the issue in question” when the jury’s decision of his guilt or innocence hinged on his credibility. In arriving at a verdict, when *728 a jury is required to determine the truth from two contradictory witnesses, A and B, and the trial court twice informs the jury that B is a convicted felon, we simply cannot conclude that such evidence did not weigh in the jury’s determination of B’s credibility and ultimately the guilty verdict for aggravated assault.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY AS TO COUNT I, AGGRAVATED ASSAULT, IS REVERSED AND REMANDED FOR A NEW TRIAL. THE JUDGMENT AS TO COUNT II, POSSESSION OF A WEAPON BY A CONVICTED FELON, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART AND IN RESULT BY BARNES, J. CARLTON, J., NOT PARTICIPATING.

. The trial judge stated that the knife was "the smallest pocket knife” he had ever seen.

. This testimony is taken verbatim from the record.

. The weapon Walls allegedly used during the altercation was referred to as both a blackjack and slap-stick in the record. For consistency, we will hereafter refer to it as a blackjack throughout the opinion.

. We assume one of the two individuals who gave statements was Love. The second individual apparently neither testified nor was his or her statement admitted at trial.