# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00162-COA

**CARL DEANTHONY SMITH A/K/A CARL SMITH**　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/18/2024 |
| TRIAL JUDGE: | HON. TONI DEMETRESSE TERRETT |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED - 05/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.　A Warren County Circuit Court jury convicted Carl Deanthony Smith of two counts of sexual battery of a victim under fourteen years of age (Counts I and II) and ten counts of possession of child pornography (Counts III through XII). The Warren County Circuit Court sentenced Smith to serve two concurrent terms of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for the two sexual-battery convictions. For the ten convictions of possession of child pornography, the circuit court sentenced Smith to

serve ten concurrent terms of forty years in MDOC's custody. The circuit court ordered that Smith's forty-year sentences for child pornography run consecutively to his sentences of life imprisonment for sexual battery. In addition, the circuit court fined Smith $1,000 for each count of sexual battery and $50,000 for each count of possession of child pornography.

¶2. On appeal from his convictions and sentences, Smith argues that insufficient evidence supported his convictions for sexual battery, his sexual-battery convictions were against the overwhelming weight of the evidence, and prejudice resulted from the joinder of the sexual-battery counts with the child-pornography counts. Because we find insufficient evidence to sustain Smith's two sexual-battery convictions, we reverse and render Smith's convictions and sentences for Counts I and II. We find no error, however, as to Smith's convictions for possession of child pornography and affirm his convictions of Counts III through XII. We remand the case to allow the circuit court to reconsider Smith's sentencing in light of our decision to reverse and render his convictions of sexual battery. *See O'Kelly v. State*, 267 So. 3d 282, 296-97 (¶57) (Miss. Ct. App. 2018) (recognizing that a circuit court's sentencing in a multi-count indictment may be interdependent and that reversal on any one of the counts may impact the circuit court's intent as to sentencing on the remaining affirmed convictions).

**FACTS**

¶3. Around midnight on January 31, 2023, officers from the Vicksburg Police Department responded to a call about a shooting victim at a McDonald's parking lot in Vicksburg, Mississippi. Upon arriving at the crime scene, the officers determined that a bullet had

2

struck and killed Calvin,[1] a thirteen-year-old passenger inside Smith's vehicle. An officer interviewed Smith as a witness to Calvin's death.[2] Smith explained that he was Calvin's godfather and that Calvin's mother often allowed Calvin and Smith to go various places alone together, even late at night. Smith stated that he had driven Calvin around and taken him to a nearby store. The officer asked for Smith's permission to search his cell phone for any evidence that might be relevant to the investigation into Calvin's death. After obtaining Smith's written consent, the officer searched Smith's cell phone.

¶4. During the search of Smith's cell phone, the officer discovered evidence of child pornography on the device. The officer halted his search of the cell phone and alerted his deputy police chief of his findings. Once the deputy police chief obtained a search warrant for Smith's phone, an investigator with specialized training performed a forensic extraction of the data on Smith's phone. The data extracted from the cell phone included sexually explicit material downloaded from the Internet as well as videos of a sexual nature that depicted Calvin, the thirteen-year-old passenger who had died inside Smith's vehicle.

¶5. Following the cell-phone extraction, an officer once again questioned Smith. At Smith's trial, the State would later enter the recorded interview into evidence. During the interview, the officer questioned Smith about the child pornography discovered on Smith's cell phone. The officer asked Smith about his "sexual relationship with [Calvin]." Smith

---

[1] We use a pseudonym to protect the identity of the minor victim.

[2] The record contains no testimony or evidence to show that investigators ever considered Smith a suspect in Calvin's death.

initially denied ever engaging in a sexual relationship with Calvin. Smith also denied taking the videos of Calvin that had been extracted from Smith's cell phone. The officer then asked, "How long have you been having sex with [Calvin]?" Smith again denied the allegation. The interviewing officer explained to Smith that even oral sex constituted sex. The officer then asked, "How long have you been having oral sex with [Calvin]?" In response, Smith stated, "I have never had sex with [Calvin]."[3]

¶6. Smith claimed throughout the interview that his cell phone had been hacked. Referring once more to Calvin, the officer said, "I know that this young man has been performing oral sex on you. Am I correct?" When Smith again denied the allegation that Calvin had performed oral sex on him, the officer responded that he knew Calvin had done so. The officer then asked Smith if he had engaged in any type of sexual relations with Calvin on the night of Calvin's death. Smith said no, and the officer asked when Smith had last engaged in sex with Calvin.

¶7. After pausing and considering the officer's question, Smith finally admitted that he had not engaged in sexual conduct with Calvin during the current calendar year or the preceding year. Smith further admitted, "It was the year before last." The officer clarified that Calvin would have been ten years old when Smith last had sex with him. Smith agreed

---

[3] While Smith eventually admitted to engaging in sexual conduct with Calvin, he denied having "oral sex" with Calvin. The questions about oral sex were the only ones the investigator posed to Smith that included sexual penetration, which is an essential element of the indicted offense of sexual battery.

with the officer's assessment and began to apologize. The officer then stated to Smith, "You've been having sexual relations with this young man [(Calvin)] and with other young men." Smith interrupted the officer to clarify that he had not had sex with any other young men. Smith also asked the officer how much time in prison the officer thought Smith would receive.

¶8. After discussing the other child pornography extracted from Smith's cell phone, the officer returned to the topic of Smith's sexual relationship with Calvin. Referring to their earlier conversation, the officer stated, "You just said and admitted that you've had sexual relations with him [(Calvin)] at least twice." The officer then asked about other children Smith had driven around in his vehicle. Smith began to provide the officer with the names and ages of other children who had ridden in his vehicle with him. When the officer asked if Smith was having sex with these other children, Smith responded no. The officer then explained that he only wanted the names and ages of any other children with whom Smith had sex. After another pause, Smith responded that it was "just two or three times with [Calvin]." Later in the conversation, the officer reminded Smith of his earlier statement that he treated all children with respect. The officer then asked, "Do you think that you having sex with a ten-year-old boy up until all this time is having respect for him?" In response, Smith admitted, "No, sir."

¶9. Police officers took Smith into custody, and a Warren County grand jury indicted him on two counts of sexual battery and ten counts of possession of child pornography. At

Smith's trial on all twelve indicted counts, the State presented evidence and testimony from the officers involved in the search and data extraction of Smith's cell phone and his interviews. Following the State's case-in-chief, the defense moved unsuccessfully for a directed verdict. The defense then rested without calling any witnesses.

¶10. After deliberating, the jury found Smith guilty of both counts of sexual battery and all ten counts of possession of child pornography. The circuit court ordered Smith to serve two concurrent terms of life imprisonment for the sexual-battery convictions and ten concurrent forty-year sentences for possession of child pornography. The circuit court ordered that Smith's concurrent terms of forty years for child pornography run consecutively to his life sentences for sexual battery, with all sentences to be served in MDOC's custody. In addition, the circuit court assessed Smith a fine for each of his twelve convictions. Smith unsuccessfully moved for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, Smith appeals.

## DISCUSSION

### I. Sufficiency of the Evidence as to Counts I and II for Sexual Battery

¶11. Smith argues that without any other corroborating evidence, his recorded interview statements alone were insufficient to sustain his two convictions for sexual battery. According to Smith, the State's evidence failed to establish the corpus delicti of the crime charged (i.e., that a sexual battery actually occurred), much less prove the essential element of sexual penetration. Asserting that insufficient evidence supported his convictions for

6

sexual battery, Smith asks this Court to reverse the two convictions and to render a judgment in his favor as to Counts I and II of his indictment.

¶12. We review Smith's challenge to the sufficiency of the evidence de novo. *McLaughlin v. State*, 338 So. 3d 705, 717 (¶33) (Miss. Ct. App. 2022). "The evidence is viewed in a light most favorable to the State, and the State is given all favorable inferences that can be reasonably drawn from the evidence." *Id.* In reviewing "a challenge to the sufficiency of the evidence[,] . . . the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McLaughlin*, 338 So. 3d at 717 (¶33) (quoting *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018)).

¶13. Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2020) establishes that the elements of the sexual battery of a minor under fourteen years of age include the following: (1) sexual penetration (2) of "[a] child under the age of fourteen (14) years" (3) by a person who "is twenty-four (24) or more months older than the child." As discussed, Smith asserts that the State failed to present evidence to establish the essential element of penetration. He further asserts that without independent corroborating evidence, his recorded interview statements to law enforcement provided an insufficient basis to sustain his convictions for sexual battery.

¶14. Relevant to Smith's arguments on appeal, "corpus delicti is defined as the body or substance of the crime." *Stephens v. State*, 911 So. 2d 424, 434 (¶32) (Miss. 2005) (quoting *Parks v. State*, 884 So. 2d 738, 742 (¶10) (Miss. 2004)). As Smith contends, a defendant's

7

"confession itself is not sufficient to support a felony conviction unless [the confession] is corroborated by independent evidence of the corpus delicti." *Id.* at 435 (¶34). When a defendant confesses, "much slighter evidence is required to prove corpus delicti." *Id.* (quoting *Miskelley v. State*, 480 So. 2d 1104, 1108 (Miss. 1985)). "The corpus delicti need not be established beyond a reasonable doubt but to a probability, and proof coupled with a confession may be considered as establishing the corpus delicti beyond a reasonable doubt." *Id.*

¶15.    The elements instructions given at the close of Smith's trial informed the jury that to convict Smith of sexual battery, the jury must find beyond a reasonable doubt that Smith had "engage[d] in sexual penetration" by "inserting his penis" into Calvin's "mouth and/or anus . . . ." Even taking into consideration Smith's confession to law enforcement, though, we must conclude that the State failed to sufficiently prove sexual battery and, more specifically, the element of penetration. During their interview, the investigator asked Smith a single question about oral sex that would have encompassed the element of penetration. Smith, however, refuted the allegation. Although Smith later stated that he had engaged in sex with Calvin, Smith never provided details to clarify what he meant by his admission, that sexual penetration had actually occurred, or the manner in which any alleged sexual penetration occurred (i.e., through "inserting his penis" into Calvin's "mouth and/or anus" as provided in the jury instructions). Moreover, the recorded interview reflects that the investigator never pressed Smith for more information to clearly establish these details relating to the actual

8

occurrence of penetration or sexual battery. In addition, the record lacks any other proof of penetration sufficient to support Smith's convictions of sexual battery.

¶16. Although the data extraction performed on Smith's cell phone revealed videos of Calvin that were of a sexual nature, none of the videos proved the element of penetration or, by extension, the crime of sexual battery. And due to Calvin's death, no witness was available at trial to testify about the exact nature of the relationship—sexual or otherwise—between Calvin and Smith. Thus, even viewing the trial evidence "in a light most favorable to the State" and giving the State "all favorable inferences that can be reasonably drawn from the evidence[,]" we conclude there was insufficient evidence for a reasonable jury to find that the State proved the elements of sexual battery beyond a reasonable doubt. *McLaughlin*, 338 So. 3d at 717 (¶33). We therefore reverse Smith's convictions and sentences for sexual battery in Counts I and II of the indictment and render a judgment of acquittal as to these counts. Because we reverse and render Smith's sexual-battery convictions on this ground, we decline to address his alternate argument that the convictions were against the overwhelming weight of the evidence.

## II. Joinder of Counts I and II for Sexual Battery with Counts III through XII for Possession of Child Pornography

¶17. Smith also contends that the doctrine of retroactive misjoinder requires a new trial on Counts III through XII of his indictment for possession of child pornography. According to Smith, because insufficient evidence supported his sexual-battery charges, his ten counts for possession of child pornography should have been severed and tried separately. Smith

9

further argues that the improper joinder of the two sexual-battery counts with the ten counts for possession of child pornography biased the jury and irreparably prejudiced his defense regarding the charges for possession of child pornography.

¶18.    If a defendant moves to sever charges set forth in a multi-count indictment, we review the trial court's grant or denial of the severance motion for abuse of discretion. *Moates v. State*, 379 So. 3d 928, 936 (¶32) (Miss. Ct. App. 2024). Retroactive misjoinder "occurs when a trial or appellate court determines that while joinder of two or more counts against a defendant was initially proper, one or more of those counts should be vacated." *Id.* at 941 (¶60) (quoting *Williams v. State*, 37 So. 3d 717, 721 (¶9) (Miss. Ct. App. 2010)). "[I]f the defendant can show that he suffered clear and compelling prejudice as a result of the evidence introduced to support the vacated count, he is entitled to a new trial on the remaining counts." *Id.* (quoting *Williams*, 37 So. 3d at 721 (¶9)). For retroactive misjoinder to apply, however, a defendant must have been "prejudiced by evidence admissible only on a charge that failed or was invalid as matter of law." *McLaughlin*, 338 So. 3d at 728-29 (¶68) (quoting *Jones v. State*, 316 So. 3d 217, 222 (¶19) (Miss. Ct. App. 2021)). In determining "if the defendant was prejudiced on the remaining counts," we consider "the strength of the State's evidence against the defendant on the remaining counts, the evidence that was presented to prove the vacated count, and other relevant details from the defendant's criminal trial and case." *Id.* at 729 (¶68).

¶19.    Even in light of our decision to reverse Smith's convictions and sentences for sexual

battery, we find no abuse of discretion in the circuit court's failure to sever his counts for possession of child pornography. Our review of the record and appellate briefs reflects that other than his bare assertions, Smith failed to show the evidence introduced to support his sexual-battery charges resulted in "clear and compelling prejudice" to his defense on the charges of possession of child pornography. *Moates*, 379 So. 3d at 941 (¶60) (quoting *Williams*, 37 So. 3d at 721 (¶9)). In addition, we find that "the strength of the State's evidence against [Smith]" for the counts of possession of child pornography was overwhelming. *McLaughlin*, 338 So. 3d at 729 (¶68).

¶20. As the jury heard, Smith consented to have investigators search his cell phone. After discovering child pornography on Smith's cell phone, the officers obtained a search warrant and performed a data extraction on Smith's phone. The extracted data revealed multiple files of child pornography that had been downloaded from the Internet. Although many of the photos and videos showed unknown children, some of the videos depicted Calvin and were of a sexual nature. Thus, any videos of Calvin discovered on Smith's phone were not only relevant as part of the State's sexual-battery case against Smith but also used as evidence in the State's case against Smith for possession of child pornography.

¶21. During his interview with law enforcement, Smith initially proclaimed that he respected all children. Throughout the course of the interview, however, the investigator's questions to and conversation with Smith rebutted the credibility of not only this statement but also of Smith's claims that he lacked knowledge of the sexually explicit material on his

phone. Just as he denied having a role in the videos of Calvin or engaging in any inappropriate conduct with Calvin, Smith also originally denied having knowledge of the other pornographic material on his phone.

¶22. By the end of his interview with law enforcement, Smith acknowledged that he had engaged in inappropriate conduct with Calvin and that he had knowledge of the sexually explicit material on his cell phone. Although Smith's admissions regarding Calvin ultimately proved insufficient to sustain his sexual-battery convictions, those portions of his interview were still relevant to the State's overall case against Smith and to provide a coherent story at trial of his indicted crimes. For instance, after Smith finally made his admissions about Calvin, the investigator used the information to work toward an admission that Smith knowingly had the other sexually explicit material on his cell phone. The investigator attempted to determine if Smith had a similar relationship with other minors that mirrored his relationship with Calvin. The investigator also used Smith's admissions about Calvin and the material on Smith's phone depicting Calvin to refute Smith's earlier claims that he showed respect for all children and lacked knowledge of the other sexually explicit photos and videos on his phone.

¶23. Only after Smith made his admissions regarding Calvin did he eventually admit to knowingly possessing the other child pornography on his cell phone. In addition to Smith's own admissions, the jury heard the investigator's testimony that Smith's cell phone contained a subfolder with screenshots of child pornography. According to the investigator's

12

testimony, the screenshots and their location in a subfolder also demonstrated Smith's intent to knowingly preserve the images on his phone.

¶24.    Upon review, we find that the evidence supporting Smith's convictions of possession of child pornography was overwhelming. The evidence the State provided to support Smith's sexual-battery convictions also helped demonstrate that Smith knowingly possessed multiple files of child pornography on his phone. Thus, the evidence assisted the State in presenting its entire case-in-chief against Smith and telling the jury a coherent story of Smith's alleged crimes. In addition, we find that Smith has failed to prove the evidence used to support his sexual-battery charges resulted in "clear and compelling prejudice" to his defense on the charges of possession of child pornography. *Moates*, 379 So. 3d at 941 (¶60) (quoting *Williams*, 37 So. 3d at 721 (¶9)). For these reasons, we find no abuse of discretion in the circuit court's failure to sever Smith's sexual-battery charges from his charges for possession of child pornography. Accordingly, we affirm Smith's convictions for possession of child pornography.

### CONCLUSION

¶25.    Upon review, we find there was insufficient evidence to support Smith's convictions of sexual battery. We therefore reverse Smith's two sexual-battery convictions and life sentences and render a judgment of acquittal as to Counts I and II. We further find, however, that no error arose from the joinder of Smith's charges for possession of child pornography with his charges for sexual battery. Although we affirm Smith's ten convictions of

13

possession of child pornography, we remand the case to allow the circuit court to reconsider the sentencing on these affirmed convictions in light of our reversal of Smith's convictions and sentences for sexual battery.

¶26. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND ST. PÉ, JJ., CONCUR.**