STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney J. McGUIRE, Defendant-Appellant.†

Court of Appeals

*No. 95–3138–CR. Submitted on briefs July 12, 1996.—Decided September 5, 1996.*

(Also reported in 556 N.W.2d 111.)

†Petition to review denied.

374

For the defendant-appellant the cause was submitted on the briefs of *T. Christopher Kelly* of *Reynolds, Thomas, Kelly & Habermehl, S.C.* and *James H. Connors* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary E. Burke*, asst. attorney general.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

VERGERONT, J.  Rodney McGuire appeals from a judgment of conviction for misconduct in public office in violation of § 946.12(3), STATS., and misdemeanor theft in violation of § 943.20(1) and (3)(a), STATS. The charges arose out of an incident in which McGuire, then a deputy sheriff with the Dane County Sheriff's Department, found boxes of tools at the scene of an accident and retained them in his possession for a period of almost three years. The State concedes error on the misconduct conviction and agrees with McGuire that the conviction on this count should be vacated.[1] The only issue before us is whether McGuire was prejudiced in his ability to defend against the theft charge because it was tried with the "invalid"

_____

[1] The State's concession is based on its opinion, shared by McGuire, that violation of a law enforcement departmental work rule—which is the ground for the misconduct charge stated in the information—cannot form the basis for a charge of misconduct in public office under § 946.12(3), STATS. We accept the State's concession without addressing the merits of this position.

376

misconduct charge. We conclude that McGuire has not shown prejudice and affirm the theft conviction.

On the evening of December 13, 1991, Michael Price lost control of his pickup truck on Highway 12 and drove off the road. The truck rolled over and tool boxes and loose tools in the truck bed fell out. Price testified that he left the tool boxes and tools there, pushed the truck upright and drove away. He then drove off another road where he left the truck. McGuire testified that he was on duty that night and noticed the tracks going off the road on Highway 12. He followed the tracks and found a small tackle box. The next day, his day off, McGuire drove past the same spot and saw tool boxes in the field. When he started his shift that night, he put the tool boxes in his locker at the precinct. Although he knew department rules required found property to be tagged, he did not do so. He also did not complete a property supplement, a form on which found property is recorded. Sometime within the next few weeks, McGuire took the tool boxes home.[2] Five tool boxes were found in his bedroom closet on October 25, 1994, when his home was searched. The jury was instructed that the elements of misconduct in public office under § 946.12(3), STATS., were: (1) a public employee, (2) in that capacity exercised a discretionary power of his or her office, (3) in a manner inconsistent

---

[2] The evidence on when McGuire took the tool boxes home is conflicting. His former wife testified that he showed them to her when he came home from work early on December 14, 1991. Deputy Wayne Honer testified that when McGuire showed him tool boxes in his locker on December 15, 1991, there were only two or three tool boxes and they were gone several days later. McGuire testified that he kept all the tool boxes in his locker for about three weeks and then took them home the first week of January.

with the duties of employment, and (4) with intent to obtain a dishonest advantage. The jury was instructed that the elements of theft under § 943.20(1)(a), STATS., were: (1) the defendant intentionally retained movable property of another, (2) without the consent of the owner, (3) knowing he or she did not have consent of the owner, and (4) with intent to deprive the owner of permanent possession.

The State's theory of the misconduct charge was that, although departmental rules and regulations require property tagging and provide detailed steps on preparing property supplements, the timing and manner of doing this is discretionary. The intent to obtain a dishonest advantage was shown, in the State's view, by the same evidence that proved theft. The State's theory on the theft charge was that, at the time McGuire took the tool boxes home and until they were recovered, he had the intent to permanently deprive the owner of possession.

McGuire's theory of defense on the misconduct charge was that property tagging is mandatory and therefore not a discretionary power. He also argued to the jury that the information was defective because it did not properly identify the pertinent departmental procedure on preparing a property supplement and did not fairly describe the conduct that formed the basis for the charge.[3] McGuire's theory of defense on the theft charge was that he never intended to keep the tool boxes, and he made continuous efforts to find the owner. He took the tool boxes home because he knew he should have tagged them as soon as he found them and he was afraid he would get in trouble for not doing so, but he kept on looking for the owner.

---

[3] The trial court denied McGuire's motion to dismiss count one of the amended information on these grounds.

378

In support of his argument that the theft conviction must be reversed because the misconduct conviction has been vacated, McGuire relies on cases from the Second Circuit of the Federal Court of Appeals. As explained most recently in *United States v. Vebeliunas*, 76 F.3d 1283, 1293 (2d Cir. 1996), that circuit recognizes "retroactive misjoinder," which occurs when joinder of multiple counts was initially proper but, through later developments such as an appellate court's reversal of less than all convictions, joinder has been rendered improper. In order to invoke "retroactive misjoinder," a defendant must show "compelling prejudice." *Id.* Prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal may constitute compelling prejudice. *Id.* at 1294.[4]

The Second Circuit considers three factors to determine whether there is prejudicial spillover in this context: (1) whether the evidence introduced to support the dismissed count is of such an inflammatory nature that it would have tended to incite the jury to convict on the remaining count; (2) the degree of overlap and similarity between the evidence pertaining to the dismissed count and that pertaining to the remaining

---

[4] Other circuits recognize that there may be prejudicial spillover in this context requiring reversal of the remaining count. *See, e.g., U.S. v. Pelullo*, 14 F.3d 881, 898-900 (3rd Cir. 1994) (finding prejudicial spillover and reversing); *Callanan v. U.S.*, 881 F.2d 229, 235-36 (6th Cir. 1989) (finding no prejudicial spillover); *U.S. v. Townsley*, 843 F.2d 1070, 1081 (8th Cir. 1988) (finding no prejudicial spillover). *But cf. U.S. v. Holzer*, 840 F.2d 1343, 1349 (7th Cir. 1988) (declining to recognize "retroactive misjoinder" in similar context).

count; and (3) the strength of the case on the remaining count. *Id.*

The State's first response to McGuire's argument on prejudicial spillover is that he waived it because he never moved to sever the two counts. The State relies on cases in which the defendant argues on appeal that the trial court erroneously exercised its discretion in failing to sever multiple counts for trial. *See, e.g., State v. Nelson,* 146 Wis. 2d 442, 457, 432 N.W.2d 115, 122 (Ct. App. 1988) (defendant's failure to seek severance on particular ground waived any error). However, McGuire is not contending that the trial court erred in failing to sever the two counts but rather that this court, having determined that the conviction on count one should be vacated, may consider whether there is prejudicial spillover. The doctrine of "retroactive misjoinder" on which McGuire relies assumes that joinder was proper initially, so there would have been no reason for McGuire to move the trial court for severance.

It appears that no reported Wisconsin case has addressed this issue. Apart from waiver, the State does not provide any argument against adopting the approach of the Second Circuit and permitting this court to determine whether there is prejudicial spillover from the dismissed count. Indeed, the State uses many of the second circuit cases applying "retroactive misjoinder" to defeat McGuire's claim of prejudice.[5] We conclude that where an appellate court

---

[5] As the State notes, because § 971.12, STATS., Wisconsin's criminal joinder and severance statute, derives from analogous federal rules of criminal procedure, Wisconsin courts may look to federal cases for guidance on joinder issues. *See State v. Leach,* 124 Wis. 2d 648, 670, 370 N.W.2d 240, 252 (1985).

has determined that conviction on one or more counts should be vacated, even if the defendant did not move for severance before the trial court, the defendant is entitled to a new trial on the remaining counts if the defendant shows compelling prejudice arising from the evidence introduced to support the vacated counts. We adopt the three-factor analysis of *Vebeliunas* as the proper method for making this determination.[6] Applying this analysis, we conclude McGuire has not shown prejudicial spillover.

We first examine whether the evidence introduced to support the misconduct count was of such an inflammatory nature that it would tend to incite the jury to convict on the theft count. Here we consider only the evidence that would have been admissible to prove the misconduct count but not admissible to prove the theft count. *See Vebeliunas*, 76 F.3d at 1294. We have carefully reviewed the trial transcript and can see little, if any, evidence pertaining to the misconduct count that would not have been admissible on the theft count. To the extent that McGuire's status as a public employee and his violation of work rules would have

[6] Although McGuire relies on the second circuit cases in both his initial brief and his reply brief, at the close of his reply brief he adds a brief paragraph on the test for harmless error, citing *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985) (burden of proving no prejudice on beneficiary of error; test is whether there is reasonable possibility error contributed to conviction). Because the *Dyess* test appears to differ from the test utilized in the second circuit cases which McGuire relied on throughout his briefs, and because McGuire does not develop his argument on the applicability of *Dyess* in this context, we decline to consider this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992).

created a negative impression on the jury, that evidence would have been admissible on the theft charge. Perhaps some of the evidence on the interrelationship and finer points of interpretation of various work rules would not have been introduced had the theft charge been tried alone, but that evidence is not inflammatory.

McGuire suggests that the misconduct charge was more serious than the theft charge and therefore prejudicial. We reject this argument. McGuire was charged with theft of property with a value over $1,000 and under $2,500. This crime, like that of misconduct in public office, is a Class E felony. Section 943.20(3)(b), STATS. However, since the jury determined that the value of the tools and tool boxes was under $1,000, the theft conviction was for a Class A misdemeanor. Section 943.20(3)(a). The jury's ability to evaluate the evidence and reject evidence unfavorable to McGuire on the value of the property indicates that it was not influenced by prejudice against McGuire because of the misconduct charge. Moreover, the first *Vebeliunas* factor requires us to focus on the *evidence* introduced to support the vacated charge, not simply the fact of the charge.

We next consider the overlap and similarity of evidence on the two counts. In cases where the vacated count and the remaining count emanate from similar facts and the evidence introduced would have been admissible as to both, it is difficult for a defendant to make a case of prejudicial spillover. *Vebeliunas*, 76 F.3d at 1294. As we have noted above, virtually all the evidence pertaining to the misconduct count would have been admissible with respect to the theft count.

McGuire does not contend otherwise. He does assert that if the theft charge had been tried alone, he would not have repeatedly emphasized that the duty to properly tag was mandatory. This emphasis on the mandatory nature of the property tagging rule, he contends, undercut his ability to focus on a defense to the theft charge, including the defense that the property was abandoned.

The record does not support McGuire's argument. Had the theft charge been tried alone, the State would most certainly have introduced evidence of the work rule on property tagging and property supplement as evidence that McGuire intended to keep the tool boxes. Most important, the existence of the work rule and its mandatory nature was critical to McGuire's defense: his explanation of why he took the tool boxes home was that he knew he was supposed to tag them and he was afraid he would get into trouble for not having done so. That was also the basis for his explanation for keeping the tool boxes at home for the lengthy period of time and not telling his supervisor about them.

McGuire suggests he would have pursued the defense of abandonment more vigorously, but he does not explain how the decision not to do so was linked to the misconduct count. We see no inconsistency between the theory that McGuire adopted on the misconduct count—that the property tagging work rule was mandatory—and the theory that McGuire did not commit theft because he believed the property was abandoned. If McGuire would have adopted some other defense theory on the theft charge had he not been required to defend the misconduct charge, he does not tell us what that is.

It appears McGuire's argument is that, in a general sense, attention and strategy were focused differently than they would have been had the theft charge been tried alone. That is no doubt true in many cases where multiple counts are tried together. But that does not entitle a defendant to a new trial on the counts that are not vacated in the absence of a showing that the three-factor test for compelling prejudice requires a new trial. *See Pacelli v. United States*, 588 F.2d 360, 366 (2d Cir. 1978) (dissipation of defensive energies does not constitute prejudice where evidence of vacated count and remaining count are substantially the same).

Third, we consider the strength of the case against McGuire on the theft charge. The government's case must be sufficiently strong so that there is little or no likelihood that any prejudice from the vacated charge tainted the jury verdict on the remaining charge. *United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995). We conclude that is the case here.

The evidence against McGuire was substantial. McGuire's only explanation for not tagging and documenting the tool boxes and putting them in the property room, which he knew he should do, is that he thought he could find the owner. This is a weak explanation since identifying and recording the existence of the property as the departmental rules prescribe is not inconsistent with looking for the owner. McGuire's testimony that he drove around to nearby bars and cities looking for the owner could reasonably strike the jury as incredible, as could his vague testimony that for almost three years he continually

checked incident reports and ran checks for the serial numbers of the tools. There was evidence that the accident report describing the location of the accident (but not stating that tools were found) was filed on December 18, 1991, and logged at the 911 Center, which McGuire said he checked. There was also the testimony of McGuire's former wife that McGuire told her the truck was abandoned at the scene of the accident and that he knew the driver's identity, as well as testimony that during divorce proceedings, McGuire told his attorney the tool boxes "did not exist."

McGuire's argument on the weakness of the State's case focuses on testimony that he showed another deputy the tool boxes in his locker and that his former wife was biased because of a bitter divorce. While there is some evidence that could be interpreted as supporting McGuire's defense, we are persuaded that the evidence against him was sufficiently strong such that there is little or no likelihood that his conviction on the theft charge was due to prejudicial spillover from the misconduct charge.

*By the Court.*—Judgment affirmed in part and reversed in part.