KLOPPENBURG, J.[1]
¶1 D.J.S. appeals an order terminating his parental rights to E.W.D. A jury found that three grounds existed to terminate his parental rights: continuing need of protection or services, abandonment, and failure to assume parental responsibility. The circuit court subsequently held a dispositional hearing and determined that it was in E.W.D.'s best interests to terminate D.J.S.'s parental rights. D.J.S. raises three issues on appeal: (1) the circuit court erred by not dismissing as unconstitutional the first ground for termination of his parental rights, continuing need of protection or services; (2) the evidence introduced at the jury trial to support that first ground prejudiced his defense to the other two grounds, requiring a new trial on those grounds; and (3) the circuit court violated his statutory right to be in the same courtroom as the judge during the dispositional hearing when the judge attended the hearing by videoconferencing technology over D.J.S.'s objection. D.J.S. asserts that he is entitled to both a new grounds trial and a new dispositional hearing.
¶2 As to the first issue, I assume, without deciding, that the constitutional argument D.J.S. makes with regard to the first ground for termination of parental rights, continuing need of protection or services, is correct and that, therefore, that ground should have been dismissed. As to the second issue, I reject D.J.S.'s argument that the evidence introduced to support the first ground at the jury trial prejudiced his defense to the other two grounds, and, therefore, I conclude that he is not entitled to a new trial on those two grounds. As to the third issue, I conclude that D.J.S. had a statutory right under WIS. STAT. § 885.60(2) to be in the same courtroom as the judge during the dispositional hearing, and that the circuit court erred by attending the dispositional hearing via videoconferencing technology over D.J.S.'s objection; I also conclude that this error is structural, thereby requiring automatic reversal of the court's disposition. Accordingly, I reverse and remand for a new dispositional hearing only.
BACKGROUND
¶3 The Adams County Department of Health and Human Services (the Department) petitioned to involuntarily terminate D.J.S.'s parental rights to E.W.D., his then-two-year-old son. The Department alleged three grounds in support of its petition: (1) continuing need of protection or services under WIS. STAT. § 48.415(2) ; (2) abandonment under § 48.415(1) ; and (3) failure to assume parental responsibility under § 48.415(6).
¶4 The circuit court held a two-day jury trial on the three grounds alleged by the Department. The jury returned verdicts against D.J.S. on all three grounds and, based on the verdicts, the court found D.J.S. unfit.
¶5 The case proceeded to a dispositional hearing. At the hearing, the circuit court used videoconferencing technology to attend from the Marquette County courthouse while D.J.S., the witnesses, the guardian ad litem, and counsel for both parties were all at the Adams County courthouse. The record is silent as to why the circuit court did not attend the hearing in person, and it appears that neither party had any forewarning that the court would attend by videoconferencing technology.
¶6 At the start of the dispositional hearing, D.J.S. objected to the circuit court appearing by videoconferencing technology, arguing that it violated WIS. STAT. § 885.60(2). The court overruled the objection. The dispositional hearing went forward and included the testimony of two witnesses-a social worker assigned to E.W.D.'s case, called by the Department, and D.J.S.'s mother, called by D.J.S.-and argument from counsel for both parties and the guardian ad litem. At the close of the dispositional hearing, the court, still appearing by videoconferencing technology, rendered an oral ruling determining that E.W.D.'s "best interests" required termination of D.J.S.'s parental rights, and ordered D.J.S.'s parental rights terminated. D.J.S. appeals.
¶7 I recite additional facts as needed in the discussion below.
DISCUSSION
¶8 Termination of parental rights proceedings consist of two phases. In the first, or "grounds," phase, the circuit court holds a fact-finding hearing to determine "[w]hether grounds exist for the termination of parental rights." WIS. STAT. § 48.424(1)(a). In this phase, " '[t]he petitioner must prove the allegations [supporting grounds for termination] in the petition for termination by clear and convincing evidence,' " and "the parent's rights are paramount." Evelyn C.R. v. Tykila S. , 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768 (citation and emphasis omitted). "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Tammy W-G v. Jacob T. , 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854 (quoted sources omitted). The second phase, the dispositional hearing, "occurs only after the fact-finder finds a WIS. STAT. § 48.415 ground has been proved and the court has made a finding of unfitness. Id. , ¶19 (citations omitted). In the dispositional hearing, the focus is on the best interests of the child and the court makes a determination as to placement. Evelyn C.R. , 246 Wis. 2d 1, ¶23. The parent has the right to present evidence in both phases of the proceeding. Id. , ¶¶22-23.
¶9 D.J.S.'s challenges on appeal concern both the grounds and dispositional phases. I address each challenge in turn.
I. The Grounds Phase
¶10 As stated, the jury found three grounds for termination of D.J.S.'s parental rights: continuing need of protection or services, abandonment, and failure to assume parental responsibility. D.J.S.'s first issue on appeal is directed at the first ground, and his second issue is directed at the second and third grounds.
A. Continuing Need of Protection or Services Ground
¶11 The first issue that D.J.S. raises is that the circuit court should have dismissed as unconstitutional the first ground for termination of his parental rights, continuing need of protection or services. In short, D.J.S.'s argument is that, because the substance of the relevant statute changed between the time of the petition in this case and the jury trial, see 2017 Wis. Act 256 (amending WIS. STAT. § 48.415(2)(a)3. ), the use of the current form of the statute at trial violated his due process right to "fundamental fairness."
¶12 I need not detail further the nuances of D.J.S.'s constitutional argument, nor do I reach its merits. Instead, I assume, without deciding, that D.J.S.'s constitutional argument is correct, and that the circuit court should have dismissed the first ground for termination of parental rights prior to trial, as D.J.S. asserts. However, as I explain, even with the dismissal of this ground, D.J.S. fails to show that he is entitled to a new trial on the remaining two grounds.
B. Abandonment and Failure to Assume Parental Responsibility Grounds
¶13 D.J.S.'s second issue concerns the other two grounds found by the jury, abandonment and failure to assume parental responsibility. D.J.S. acknowledges that, even if the continuing need of protection or services ground is dismissed, these other two grounds found by the jury remain. By statute, either of those grounds alone is sufficient to establish the grounds supporting the termination of D.J.S.'s parental rights. See WIS. STAT. § 48.415 ("Grounds for termination of parental rights shall be one of the following...." (emphasis added)). However, D.J.S. argues that a new trial on the abandonment and failure to assume parental responsibility grounds is, nevertheless, necessary because the jury's verdict on those grounds "was tainted" by evidence used to support the continuing need of protection or services ground.
¶14 In support of this argument, D.J.S. invokes the concept of "spillover prejudice," which establishes that "where an appellate court has determined that conviction on one or more counts should be vacated, ... the defendant is entitled to a new trial on the remaining counts if the defendant shows compelling prejudice arising from the evidence introduced to support the vacated counts." State v. McGuire , 204 Wis. 2d 372, 380-81, 556 N.W.2d 111 (Ct. App. 1996). In determining whether a defendant has shown "compelling prejudice," a court must consider:
(1) whether the evidence introduced to support the dismissed count is of such an inflammatory nature that it would have tended to incite the jury to convict on the remaining count; (2) the degree of overlap and similarity between the evidence pertaining to the dismissed count and that pertaining to the remaining count; and (3) the strength of the case on the remaining count.
Id. at 379-381.
¶15 The Department does not argue that the spillover prejudice standard does not apply to termination of parental rights proceedings. Rather, the Department argues that D.J.S. fails to show that the three factors identified in McGuire establish spillover prejudice here. As I explain, I agree.
¶16 As to the first factor, the "inflammatory nature" of the evidence used to support the dismissed count, D.J.S. points generally to trial "testimony from both D.J.S. and the social worker ... regarding D.J.S.'s return conditions and ... his failure to meet such conditions" and asserts that "such evidence portrayed D.J.S. in an unfavorable light and prejudiced the jury's view of him[.]" However, D.J.S. does not clearly identify the evidence he believes should not have been presented to the jury, and merely argues in conclusory fashion that evidence on these topics was "inflammatory" evidence that "tended to incite the jury to vote against D.J.S." on the abandonment and failure to assume parental responsibility grounds. Moreover, the record cites D.J.S. provides do not refer to testimony that is, on its face, inflammatory. Because D.J.S. has not articulated what particular testimony or statements were inflammatory, or given any reason why the evidence would incite the jury, he has not shown that the first factor weighs in favor of a new trial on the remaining two grounds alleged by the Department and found by the jury.
¶17 As to the second factor, "the degree of overlap and similarity between the evidence pertaining to the dismissed count and that pertaining to the remaining count[s]," D.J.S. argues that evidence concerning the continuing need of protection or services ground "was entirely dissimilar and independent from" the evidence needed to establish the other two grounds. However, D.J.S. again fails to identify the evidence he believes to be problematic. As a result, I cannot assess whether the evidence he believes should not have been introduced would have been admissible in support of the other two grounds, nor can I determine the "overlap" between that evidence and the evidence pertaining to the other two grounds. Accordingly, D.J.S. has not shown that the second factor weighs in favor of a new trial on the remaining two grounds alleged by the Department and found by the jury.
¶18 Finally, as to the third factor, "the strength of the case on the remaining count[s]," the Department's case on the abandonment and failure to assume parental responsibility grounds was strong. For brevity, and because only one ground is needed to establish grounds to terminate D.J.S.'s parental rights, I address only the strength of the case as to one of these grounds-abandonment.
¶19 To prove abandonment, the Department was required to show that: (1) E.W.D. was placed outside of the parental home pursuant to a court order containing the parental rights notice required by WIS. STAT. § 48.356 ; and (2) D.J.S. failed to visit or communicate with E.W.D. for a period of three months or longer. WIS. STAT. § 48.415(1)(a)2. On appeal, D.J.S. does not dispute that both of these elements were established by the trial evidence, and indeed he conceded as much before the jury. Instead, he simply asserts, without elaboration, that he made "a statutory good cause defense" in closing argument. However, the jury explicitly rejected D.J.S.'s good cause defense in its special verdict, and D.J.S. does not develop any argument that the evidence did not support the jury's rejection of the defense. Accordingly, D.J.S. has also not shown that the third factor weighs in favor of a new trial on the remaining two grounds alleged by the Department and found by the jury.
¶20 In sum, D.J.S. fails to show spillover prejudice resulting from evidence introduced to support the continuing need of protection or services ground. He is therefore not entitled to a new trial on the remaining two grounds alleged by the Department and found by the jury.
II. The Dispositional Phase
¶21 D.J.S. argues that the circuit court erred by attending the dispositional hearing by videoconferencing technology over D.J.S.'s objection. Specifically, D.J.S. asserts that the court's attending by videoconferencing technology over his objection violated his right under WIS. STAT. § 885.60(2) to be in the same courtroom as the judge during the dispositional hearing. He asserts that as a result, he is entitled to a new dispositional hearing. I agree.
¶22 I first address D.J.S.'s statutory argument and explain that under WIS. STAT. § 885.60(2), a respondent has a right to be "physically present" during the dispositional hearing, which includes a right to be in the same courtroom as the judge. I then turn to the Department's counterargument that any error in denying D.J.S. that right was harmless. As I explain, the court's attendance by videoconferencing technology at the dispositional hearing-in which it heard testimony and ordered D.J.S.'s parental rights terminated-over D.J.S.'s objection, was a structural error not subject to harmless error review. Accordingly, the order terminating D.J.S.'s parental rights must be reversed, and the case remanded for a new dispositional hearing.
A. Whether the circuit court erred under WIS. STAT. § 885.60(2)
¶23 As stated, D.J.S. argues that the circuit court violated his right under WIS. STAT. § 885.60(2) to be in the same courtroom as the judge during the dispositional hearing. This argument presents a question of statutory interpretation, which I review de novo. See State v. Bobby G. , 2007 WI 77, ¶42, 301 Wis. 2d 531, 734 N.W.2d 81 (matters of statutory interpretation are reviewed de novo).
¶24 "The purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect. Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " Wisconsin Prof'l Police Ass'n v. WERC , 2013 WI App 145, ¶17, 352 Wis. 2d 218, 841 N.W.2d 839 (citation and quoted source omitted). In analyzing a statute's plain meaning, I "give statutory terms their 'common, ordinary, and accepted meaning.' " State v. Soto , 2012 WI 93, ¶19, 343 Wis. 2d 43, 817 N.W.2d 848 (quoted source omitted). "Additionally, a plain meaning analysis may look to statutory context and structure ... including the language and structure of surrounding or closely related statutes," and may look to previous decisions that have examined the relevant statutes. Id. , ¶20. "The purposes underlying a statute are also useful in ascertaining a statute's meaning." Id.
¶25 WISCONSIN STAT. § 885.60 governs the use of videoconferencing technology in termination of parental rights proceedings. It provides in relevant part as follows:
(1) Subject to the standards and criteria set forth in ss. 885.54 and 885.56 and to the limitations of sub. (2), a circuit court may, on its own motion or at the request of any party, in any criminal case or matter under ch[ ]. 48, ... permit the use of videoconferencing technology in any pre-trial, trial or fact-finding, or post-trial proceeding.
(2)(a) Except as may otherwise be provided by law, a defendant in a criminal case and a respondent in a matter listed in sub. (1) is entitled to be physically present in the courtroom at all trials and sentencing or dispositional hearings.
....
(d) If an objection is made by the defendant or respondent in a matter listed in sub. (1), regarding any proceeding where he or she is entitled to be physically present in the courtroom, the court shall sustain the objection. For all other proceedings in a matter listed in sub. (1), the court shall determine the objection in the exercise of its discretion under the criteria set forth in s. 885.56.
Sec. 885.60.
¶26 D.J.S. contends that WIS. STAT. § 885.60(2)(a) establishes his right to be in the same courtroom as the judge during the dispositional hearing.
¶27 By its terms, WIS. STAT. § 885.60(2) entitles a respondent in a termination of parental rights proceeding to be "physically present in the courtroom" during a dispositional hearing. Sec. 885.60(2)(a) and (d) (providing that a respondent is entitled to be physically present in the courtroom and that if a respondent objects to videoconferencing, the circuit court shall sustain the objection). However, the statute is silent as to whether a judge must also be present in the courtroom. To fill in this gap, Soto is instructive.
¶28 In Soto , the circuit court judge attended the defendant's plea hearing by videoconferencing technology. 343 Wis. 2d 43, ¶¶1-2. At the hearing, the judge accepted the defendant's plea and convicted him. Id. , ¶¶9-10. The defendant appealed, arguing that the judge's attendance by videoconferencing technology violated his right to be "present" under WIS. STAT. § 971.04(1)(g), which provides that the defendant "shall be present ... [a]t the pronouncement of judgment and the imposition of sentence." Id. , ¶16. Our supreme court held that the statute provided the defendant with the right to be in the same courtroom as the judge at the plea hearing, but that the defendant waived that right by expressly consenting to the use of videoconferencing technology for the plea hearing. Id. , ¶2.
¶29 While Soto interpreted the term "present" in WIS. STAT. § 971.04(1), it provides guidance for interpreting the term "physically present" in WIS. STAT. § 885.60(2). The initial issue in Soto was whether the word "present" in § 971.04(1) required the defendant's physical presence in the same courtroom as the judge during the plea hearing. 343 Wis. 2d 43, ¶¶2, 15. In analyzing this question, Soto looked to the purposes underlying the statute's requirement that a defendant be "present" when judgment is pronounced. Id. , ¶¶26-27. The court reasoned that one purpose of requiring the defendant's presence is to "effectively display the State's power" during the pronouncement of judgment. Id. The court explained, "At pronouncement of judgment, the power of the State resides in the court, then personified by the circuit court judge. That state power is more forcefully exercised when the defendant and the judge are in the same courtroom, rather than having the defendant in a courtroom and the judge in a remote location." Id.
¶30 The court also considered that WIS. STAT. § 971.04(1) requires that "the defendant shall be present" at trial, during voir dire of the trial jury, and when the jury returns its verdict. Id. , ¶27. The court reasoned that "[o]ne would expect that the judge would be present in the same courtroom as the defendant when a trial is ongoing, when the jury is being questioned prior to their selection, and when the verdict is returned." Id. The court concluded that the same expectation applies to a plea hearing, so that the requirement in § 971.04(1)(g) that the defendant be present at a plea hearing means that the defendant had "a statutory right to be present in the same courtroom as the judge" because the judge pronounced judgment in regard to the crime to which the defendant pled. Id.
¶31 The holding and reasoning in Soto are persuasive here. Soto held that the defendant's right under WIS. STAT. § 971.04(1)(g) to be "present" at the pronouncement of judgment encompasses a right to be in the same courtroom as the judge. 343 Wis. 2d 43, ¶27. Like the statute at issue in Soto , WIS. STAT. § 885.60(2) guarantees to a defendant or respondent a right to be "present" during certain proceedings, including a dispositional hearing, and indeed adds the modifier that a defendant or respondent is entitled to be "physically present" in the courtroom. Sec. 885.60(2) (emphasis added). The addition of the modifier "physically" accentuates what the holding of Soto already suggests, namely, that the right to be "present" necessarily includes the right to be in the same courtroom as the judge.
¶32 Furthermore, the reasoning of Soto applies equally strongly here. As stated, Soto reasoned that one purpose of requiring a defendant's presence during the pronouncement of judgment is to "display the State's power," and that purpose cannot be as effectively accomplished by a judge attending by videoconferencing technology. 343 Wis. 2d 43, ¶26. This purpose stems from the need to "demonstrate[ ] the State's power to require compliance with the criminal code and to hold accountable those who do not comply." Id.
¶33 Similar purposes apply in the disposition of a termination of parental rights proceeding. "[T]he power of the state to terminate the parental relationship is an awesome one." M.W. v. Monroe Cty. DHS , 116 Wis. 2d 432, 436, 342 N.W.2d 410 (1984), holding modified by Steven V. v. Kelley H. , 2004 WI 47, 271 Wis. 2d 1, 678 N.W.2d 856 ; see also Rhonda R.D. v. Franklin R.D. , 191 Wis. 2d 680, 718, 530 N.W.2d 34 (Ct. App. 1995) ("The power to terminate parental rights, the power to sever permanently the legal ties between parent and child, is an awesome governmental power." (quoted source omitted)). Thus, a respondent at a dispositional hearing in a termination of parental rights proceeding is subject to the "awesome" power of the State in much the same way as a criminal defendant at the pronouncement of judgment. It follows that the respondent's "physical presence" at the dispositional hearing, like the defendant's presence at the pronouncement of judgment, is necessary to display the State's power-a purpose that cannot be effectively carried out by a judge attending by videoconferencing technology.
¶34 In sum, guided by Soto , I conclude that under WIS. STAT. § 885.60(2), a respondent in a termination of parental rights proceeding has a right to be in the same courtroom as the judge during the dispositional hearing. Here, the circuit court violated this right when it attended the dispositional hearing by videoconferencing technology over D.J.S.'s objection. In doing so, the court erred.[2] See WIS. STAT. § 855.60(2)(d) ("[i]f an objection is made by the ... respondent ... the court shall sustain the objection" (emphasis added)).
B. Whether the error was structural
¶35 The conclusion that D.J.S.'s statutory right to be in the same courtroom as the judge during the dispositional hearing was infringed does not end the analysis. The Department argues that any error by the circuit court in attending the dispositional hearing by videoconferencing technology over D.J.S.'s objection was harmless because, in the Department's words, it was merely "a technical deviation" and there is no "reasonable possibility" that the court's failure to attend in person contributed to the outcome of the hearing. See Evelyn C.R. , 246 Wis. 2d 1, ¶28 (an error is harmless if there is no "reasonable possibility that the error contributed to the outcome of the action or proceeding at issue"). In reply, D.J.S. contends that the court's error was a structural error not subject to harmless error review, requiring automatic reversal and a new dispositional hearing. I agree with D.J.S.
¶36 "Structural errors are per se prejudicial." State v. Travis , 2013 WI 38, ¶51, 347 Wis. 2d 142, 832 N.W.2d 491. That is, they are not subject to harmless error analysis, and a party who suffers from a structural error does not need to show prejudice arising from the error. State v. Pinno , 2014 WI 74, ¶¶47, 50, 356 Wis. 2d 106, 850 N.W.2d 207. Instead, structural errors are "so intrinsically harmful as to require automatic reversal." State v. Nelson , 2014 WI 70, ¶30, 355 Wis. 2d 722, 849 N.W.2d 317 (quoted source omitted).
¶37 Our supreme court has recently set out the test for whether an error is structural in the context of a termination of parental rights proceeding:
The United States Supreme Court provides the rubric we use in categorizing trial errors. The potentially harmless ones, it says, are those that "occur[ ] during presentation of the case to the jury and their effect may be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." Only a very limited number of errors "require automatic reversal," because "most constitutional errors can be harmless...." In fact, "there is a strong presumption that any ... errors that may have occurred are subject to harmless-error analysis."
A "structural error," on the other hand, is not discrete. It is something that either affects the entire proceeding, or affects it in an unquantifiable way:
Structural errors are different from regular trial errors because they "are structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." Structural defects affect "[t]he entire conduct of the trial from beginning to end." An error also may be structural because of the difficulty of determining how the error affected the trial.
So we recognize a structural error by how it "affect[s] the framework within which the trial proceeds, rather than being simply an error in the trial process itself." That is to say, structural errors "permeate the entire process." Upon encountering structural error, we must reverse.
State v. C.L.K. , 2019 WI 14, ¶¶14-15, 385 Wis. 2d 418, 922 N.W.2d 807 (quoted sources and citations omitted, brackets in original).
¶38 Our supreme court has also explained that structural errors "seriously affect the fairness, integrity or public reputation of judicial proceedings and ... 'infect the entire trial process and necessarily render a trial fundamentally unfair.' " Travis , 347 Wis. 2d 142, ¶54 (quoted sources omitted). "The limited class of structural errors include: complete denial of the right to counsel, a biased judge, excluding members of the defendant's race from a grand jury, denial of the right to self-representation, denial of the right to a public trial, and a defective reasonable doubt instruction." Pinno , 356 Wis. 2d 106, ¶50 (citations and footnotes omitted). In C.L.K. , the court added to that class denying a respondent the opportunity to present his defense at the trial in the grounds phase of a termination of parental rights proceeding. 385 Wis. 2d 418, ¶1.
¶39 Applying these principles, I conclude that the circuit court's attendance at the dispositional hearing by videoconferencing technology over D.J.S.'s objection constituted structural error.
¶40 "A termination of parental rights proceeding is ... not the ordinary civil action. At stake here are fundamental rights. Termination proceedings deprive parents of a significant liberty interest in their children." State v. Shirley E. , 2006 WI 129, ¶59, 298 Wis. 2d 1, 724 N.W.2d 623. As a result, respondents have a fundamental right to procedural safeguards in such proceedings. Bobby G. , 301 Wis. 2d 531, ¶4 n.5, ("Due to the severe nature of terminations of parental rights, termination proceedings require heightened legal safeguards against erroneous decisions[.]" (quoted source omitted)). The Wisconsin legislature has, in WIS. STAT. § 885.60(2), placed the right of a respondent to be physically present in the same room as the judge during a dispositional hearing among these protections. See 2008 Comment to sec. 885.60 ("It is the intent of s. 885.60 to scrupulously protect the rights of ... respondents in matters which could result in loss of ... fundamental rights with respect to their children by preserving to such litigants the right to be physically present in court at all critical stages of their proceedings."). Although the right is statutory, rather than constitutional, that does not shield it from structural error analysis. See Shirley E. , 298 Wis. 2d 1, ¶¶59-64 (violation of statutory right to counsel in a termination of parental rights proceeding was structural error). Rather, if the right is "essential to a fair proceeding," and if the right is violated in a manner consistent with the standards outlined above, then structural error is present. See id. , ¶¶60, 63.
¶41 Here, the circuit court's failure to abide by the strictures of WIS. STAT. § 885.60(2) at the dispositional hearing necessarily "affect[ed] the framework within which the trial proceed[ed]." See C.L.K. , 385 Wis. 2d 418, ¶15 (quoted source omitted). This is so because the physical absence of the judge from the courtroom "permeate[d] the entire process" and fundamentally altered the way the testimony was perceived and, by extension, D.J.S.'s ability to present his case. See id. , ¶¶15, 19 (framework of trial altered when respondent is deprived of opportunity to "present a complete defense").
¶42 The question facing the circuit court at the dispositional hearing was whether termination of D.J.S.'s parental rights would be in E.W.D.'s best interests. WIS. STAT. § 48.426(2). In making that determination, the court was required to consider a number of statutory factors, including "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." WIS. STAT. § 48.426(3)(c). The testimony presented, including by D.J.S.'s mother, specifically spoke to the extent of E.W.D.'s relationships with his paternal grandparents and his foster parents.
¶43 The circuit court's physical absence from the courtroom necessarily altered the way this crucial testimony was perceived. The court's vantage point as a first-hand witness of trial testimony is present in all proceedings at which testimony is taken, and it is precisely because of this unique vantage point that the circuit court is often deferred to in evaluating testimony. See Johnson v. Merta , 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980) (we defer to the circuit court on credibility determinations because of its "superior opportunity ... to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony." (quoted source omitted)). However, the court's ability to assess testimony changes when the court observes the testimony, not from within the close confines of the courtroom, but from afar, with the impersonal barrier of a viewscreen and microphone between it and the witness. See United States v. Thompson , 599 F.3d 595, 601 (7th Cir. 2010) (when a judge attends a proceeding by videoconferencing technology, "[t]he judge's absence from the courtroom materially changes the character of the proceeding").
¶44 The circuit court's altered ability to observe the witnesses is critical in a dispositional hearing such as the one at issue here, where the essence of the court's role is to determine the intensely subjective and personal issue of the depth of an interpersonal relationship. In deciding such an issue, the demeanor, attitude, and strength of emotion evident in a witness testifying to the child's "substantial relationship[s]" with others assume an even greater importance, and are essential to the final disposition. These factors cannot be adequately conveyed via digital connection, but are best ascertained in person, using the time-tested methods of personal interaction and sound character judgment. See United States v. Lawrence , 248 F.3d 300, 304 (4th Cir. 2001) ("[W]atching an event on the screen remains less than the complete equivalent of actually attending it.").
¶45 Here, D.J.S. called his mother to testify in his defense. D.J.S.'s mother's testimony addressed, among other things, her efforts to spend time with E.W.D., the barriers she faced from the Department, the extent to which E.W.D. recognized her and D.J.S., and E.W.D.'s character and favorite activities. These topics spoke to the heart of the dispositive issue-whether terminating D.J.S.'s parental rights was in E.W.D.'s best interests. But because the circuit court did not witness the testimony in person, its evaluation of D.J.S.'s mother's testimony was intrinsically altered, and D.J.S.'s ability to present his defense was compromised.
¶46 Furthermore, "the difficulty of determining how" the circuit court's physical absence from the dispositional hearing affected the outcome is great. See Pinno , 356 Wis. 2d 106, ¶49 ("An error also may be structural because of the difficulty of determining how the error affected the trial."). What the judge cannot observe over videoconferencing technology-the intangible qualities of the witnesses' testimony-is also not apparent to a reviewing court, thus precluding a reviewing court from assessing how the judge's failure to attend in person contributed to the final disposition. "Demeanor and tone of voice do not survive the courtroom scene, and findings of a [circuit] court in such regard are not easy to review, much less set aside." Underwood v. Strasser , 48 Wis. 2d 568, 573, 180 N.W.2d 631 (1970). Indeed, as one court has noted, "there is no way to know what the judge would have done had he been present in" the courtroom rather than in virtual attendance. Thompson , 599 F.3d at 601. Thus, while a court's decision to attend a dispositional hearing by videoconferencing technology undoubtedly affects the proceeding by altering the perception of relevant testimony, it "affects it in an unquantifiable way." C.L.K. , 385 Wis. 2d 418, ¶15. The impossibility of determining how the court's failure here to attend the disposition hearing in person affected the outcome of the hearing, strengthens the argument that the error of attending by videoconferencing technology is structural. See id.
¶47 My conclusion as to structural error is confined to the circumstances of the dispositional hearing in this case. Specifically, it is because the circuit court both heard crucial testimony concerning the child's relationship with his family members and rendered an oral ruling terminating D.J.S.'s parental rights that the court's attending by videoconferencing technology over D.J.S.'s objection constitutes structural error. In these circumstances the court's attending by videoconferencing technology affected the framework of the hearing and the court's perception of crucial testimony in ways not capable of precise determination. In these circumstances, the error was structural, and, therefore, requires automatic reversal. See Nelson , 355 Wis. 2d 722, ¶30.
CONCLUSION
¶48 For the reasons stated above, I conclude that even with the dismissal of the continuing need of protection or services ground, in the grounds phase of this termination of parental rights proceeding, D.J.S. fails to show that he is entitled to a new trial on the abandonment and failure to assume parental responsibility grounds alleged by the Department and found by the jury. However, I also conclude that D.J.S. is entitled to a new hearing in the dispositional phase of this proceeding because the circuit court erred by attending the dispositional hearing by videoconferencing technology over D.J.S.'s objection, and the error was structural. Accordingly, I reverse the order terminating D.J.S.'s parental rights and remand for a new dispositional hearing.
By the Court. -Order reversed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The Department argues that the circuit court, in overruling D.J.S.'s objection, acted consistent with the legislative purpose of chapter 48 "to achieve permanence for children without the child waiting unreasonably long periods of time." However, the Department does not explain why the court's attending by videoconferencing, over a respondent's objection, is necessary to achieve that purpose.